## WHAM v. UNITED STATES.

### No. 10076.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 1, 1949.

Decided Jan. 30, 1950.

Mr. N. Meyer Baker, Washington, D. C., with whom Mr. Lucien H. Mercier, Washington, D. C., was on the brief, for appellant.

Mr. Raymond E. Baker, Assistant United States Attorney, Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and John D. Lane, Assistant United States Attorney, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER and PROCTOR, Circuit Judges.

PROCTOR, Circuit Judge.

This case presents the question whether appellant, a member of the Metropolitan Police Force of the District of Columbia, has a right of action for damages against the United States under the Federal Tort Claims Act, 28 U.S.C. § 921 et seq., 60 Stat. 842, now 28 U.S.C.A. §§ 1346, 2671 et seq., based upon injuries to him while on duty by the negligence of a Treasury Department employee in the operation of one of its automobiles.

The question arose in appellant's action in the District Court where, upon the pleadings and stipulated facts, a summary judgment was granted the United States. The court held that although appellant was not a federal employee, he did belong to a class for whom the United States has established by statute the Police and Firemen's Relief Fund (hereafter referred to as the Fund), Title 4, Section 501, et seq., District of Columbia Code (1940), "and supports it to the extent of 40 per centum of its cost." (Title 4, Section 516, District of Columbia Code (1940) ). Wherefore,

the court concluded that the United States, in consenting to be sued in tort, as it has by the Tort Claims Act, did not intend that those members of a class for which a comprehensive system of compensation has otherwise been provided could seek benefits under the Act, citing Dobson v. United States, 2 Cir., 1928, 27 F.2d 807, certiorari denied, 278 U.S. 653, 49 S.Ct. 179, 73 L.Ed. 563; Bradey v. United States, 2 Cir., 1945, 151 F.2d 742; Dahn v. Davis, 1922, 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696; and Jefferson v. United States, D.C.Md.1948, 77 F.Supp. 706. But the theory of exclusion stated by the court and applied in the cases cited is cast in doubt by the recent decisions in Brooks v. United States, 1949, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200; Griggs v. United States, 10 Cir., 1949, 178 F.2d 1 and Santana v. United States, 1 Cir., 1949, 175 F.2d 320. But see Feres v. United States, 2 Cir., 1949, 177 F.2d 535.

█ In the Brooks cases the Supreme Court was dealing with claims under the Tort Claims Act for death of one soldier and injuries to another while on furlough, caused by the negligent operation of a Government truck. The Court held that claimants were not barred by reason of the Government's system of benefits for soldiers and their dependents, 337 U.S. at page 53, 69 S.Ct. 918, 93 L.Ed. 1200. We think that decision controls this case. Soldiers on furlough fall within the presumption of being in line of duty and, generally speaking, enjoy the same benefits as soldiers on active duty. 10 U.S.C.A. § 456; Army Regulations 40-1025, par. 63; Army Regulations 600-550, Sec. IV, par. 19, f. (1). In principle, claimants in the Brooks cases and the claimant here must stand on an equal footing before the Tort Claims Act. Each is favored with a special system of benefits by reason of his particular employment. Neither is expressly excluded by said Act. So why, if soldiers (on furlough) directly in the federal service are not excluded, should a policeman directly in the employ of the District of Columbia, a municipal corporation, (Griffith v. Rudolph, 1924, 54 App.D.C. 352, 298 F. 672) be excluded? We can see no reason for such discrimination.

However, independently of the Brooks decision, we think the facts concerning the Fund suggest no sound basis for the exception read into the Tort Claims Act by the District Court. In our opinion the United States bears no such relationship to the Fund as to justify the Government's claim for exemption from liability under the Tort Claims Act to appellant by reason of his position as a member of the Metropolitan Police. We see no reason to suppose that Congress so intended. Nothing in the statutes concerning the Fund and nothing in the Tort Claims Act indicates any such exception. We cannot follow the argument that because policemen and firemen are expressly excepted from benefits under the District's statute for compensation to injured employees, Title 1, Section 311, District of Columbia Code (1940), they should, by implication, be excepted from the Tort Claims Act. Nor do we think any significance attaches to the fact that the Fund was authorized by Congress, or that some monies have found their way into it from federal sources.

What has happened is this: Congress in its role as the lawmaking body for the District of Columbia enacted the statutes authorizing establishment and operation of a fund to be known as "the policemen and firemen's relief fund, District of Columbia." Title 4, Section 501 et seq., District of Columbia Code (1940). The statutory scheme contemplates a broad system of relief, by way of medical and hospital care and treatment, pensions, retirement, etc., for members of the local police and fire departments. According to the legislative plan, the Fund has been created and supported from disciplinary fines against policemen and firemen, rewards, gifts and emoluments received by them for extraordinary services, a portion of their monthly salaries, donations to the Fund, proceeds from the sale of unclaimed property in custody of the Police Department, and finally, to meet any deficiencies, sums drawn by order of the District Commissioners from the District's general revenues. Title 4, Section 503, District of Columbia Code (1940). As to these general revenues, under the Act of June 29, 1922, 42 Stat.

668, ch. 249, (Title 20, Section 670a, District of Columbia Code (1929) )[1] the Federal Government assumed forty per cent of appropriations for the District of Columbia. This same proportion was made applicable to amounts assigned from time to time by the District Commissioners to meet deficiencies occurring in the Fund. Act of May 27, 1924, 43 Stat. 176, ch. 199, § 7 (Title 4, Section 516, District of Columbia Code (1940) ). Yet the Fund has never since received any such measure of support from federal revenues. This is so because of the steady flow of income from regular sources provided by the organic Act, (Title 4, Section 503, District of Columbia Code (1940) ), and because apportionment for local appropriations has not been adhered to by Congress, either as to general appropriations for the District of Columbia, or for the Fund itself. It was expressly repealed as to the latter by the Act of June 26, 1934, 48 Stat. 1230, ch. 756, § 14 (Title 47, Section 109, District of Columbia Code (1940) ). Thus apportionment has long since given way to annual lump sum appropriations, which have been far less than the forty per cent provided by the apportionment Act. Moreover, appropriations by Congress for the District of Columbia municipal government are not gifts, but as traditionally understood are in compensation for valuable benefits received by the Federal Government from the Municipality, no small part of which has been the protection to federal property and establishments by the municipal police and fire departments.

So, we think it is not accurate to speak of the Federal Government as supporting the Police and Firemen's Fund,—certainly not to the extent of forty per cent of its cost. True, some part of the monies appropriated by Congress to the Municipal Government filters down into the Fund by action of the District Commissioners in making up deficiencies out of general revenues of the District. Yet, neither in form nor substance, name nor character, can it be regarded as a fund of the United States. Of course, Congress, in its capacity as the lawmaking body for the District of Columbia, authorized the plan whereby the Fund has been established and conducted under local auspices. However, that does not justify the argument that the United States created the Fund. It has been created and supported by the monies flowing into it from the many sources authorized by statute, including the small proportions indirectly reaching it from federal revenues. All important establishments and activities of the Municipal Government require Congressional sanction— every building, including those for the police and fire departments, every fund for support of those departments, and others fulfilling the various needs of the Municipality. Yet in a legal sense they are not instrumentalities of the Federal Government, but are under direct ownership and control of the District of Columbia, a municipal corporation. See Act of June 11, 1878, 20 Stat. 102, ch. 180, § 1, as amended by Act of June 28, 1935, 49 Stat. 430, ch. 332, § 1 (Title 1, Section 102, District of Columbia Code (1940) ). The over all control by Congress of the Federal District as the seat of the national government (U.S.Const. Art. 1, Sec. 8, cl. 17) does not affect the distinct identity of the District of Columbia as a municipal corporation.

■ This brings us to the contention that if appellant is not barred under the Tort Claims Act, he was at least bound to elect between the remedies provided by the two forms of relief, and in accepting benefits from the Fund he waived his remedy under the Tort Claims Act. But, from the view we have taken, the case does not present the elements to require an election. The doctrine of election applies only where inconsistent remedies are pursued to enforce the same cause. United States v. Oregon Lumber Co., 1922, 260 U.S. 290, 301, 43 S.Ct. 100, 67 L.Ed. 261; Brown v. Christman, 1942, 75 U.S.App.D.C. 203, 126 F.2d 625, 631. It forbids the taking of contradictory positions. A choice is required between two inconsistent modes of

---

1. Repealed by Act of May 16, 1938, 52 Stat. 375, ch. 223, § 8. See note to Title 47, Section 134, District of Columbia Code (1940).

redress. Robb v. Vos, 1894, 155 U.S. 13, 41-43, 15 S.Ct. 4, 39 L.Ed. 52; Roller v. Murray, 1917, 46 App.D.C. 246, 258. But where there are two or more concurrent and consistent remedies one or all may be prosecuted until full satisfaction is obtained. United States ex rel. Warren v. Ickes, 1934, 64 App.D.C. 27, 73 F.2d 844, 849. Here appellant's injuries gave rise to separate and distinct claims,—one as a policeman against the District of Columbia for benefits afforded by the Fund; another as an individual against the United States for damages accorded by the Tort Claims Act. Obviously, these are not inconsistent remedies to enforce a single right, but concurrent or cumulative remedies against different defendants in pursuit of separate and distinct causes of action. Finally we think the question is foreclosed by the Supreme Court in the Brooks cases, for as it says 337 U.S. at page 53, 69 S.Ct. 918, 920, 93 L.Ed. 1200.

"Nor did Congress provide for an election of remedies. * * * We will not call either remedy in the present case exclusive, nor pronounce a doctrine of election of remedies, when Congress has not done so."

■ Again, we cannot accept the argument that Secs. 201 and 303(g) of the recent Act of October 14, 1949, P.L. 357, 81st Cong., 1st Sess., 5 U.S.C.A. §§ 757, 757 note, amending and making the Federal Employees Compensation Act an exclusive remedy for federal employees, alters the situation as respects members of the local police and fire departments. That Act refers only to federal employees and cannot be assumed to cover employees of the District of Columbia.

The weakness of the Government's entire argument, it seems to us, lies in a failure to recognize the force of the Brooks decision or to draw essential distinctions between the federal and municipal governments and their employees.

The judgment of the District Court must be reversed and the case remanded for further proceedings consistent with this opinion.

Reversed.