**WINSTON BROS. COMPANY and Green Construction Company d/b/a Winston-Green**

**v.**

**The UNITED STATES.**

**No. 288–69.**

United States Court of Claims.

April 14, 1972.

Charles E. Carlsen, Minneapolis, Minn., attorney of record for plaintiffs; Mordaunt, Walstad, Cousineau & Mc-Guire, Minneapolis, Minn., of counsel.

Michael J. Rubin, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus for defendant.

Before COWEN, Chief Judge, LARA-MORE, Senior Judge, and DAVIS, COLLINS, SKELTON, NICHOLS and KASHIWA, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

This case is before us on cross-motions for summary judgment. The plaintiff was engaged in constructing a tunnel in Arkansas for the Army Corps of Engineers. On August 20, 1964, the tunnel caved in, causing substantial delay and extra cost in the project, and destroying some of plaintiff's equipment. Following the disputes procedure of the contract, plaintiff sought a time extension and an equitable adjustment for equipment lost, and certain other expenses. The Corps of Engineers Board of Contract Appeals, (Eng. BCA Nos. 2732 and 2768, 68–2 BCA ¶ 7240)

found the cave-in to be the result of the Government's non-negligent but deficient design of rock bolts intended to shore up the walls of the tunnel. The Board determined that plaintiff should have an extension of time and an equitable adjustment for a constructive change. It denied, in BCA No. 2732, plaintiff's claim for reimbursement for loss of its equipment, two drill jumbos, on the ground that the loss was covered by insurance, the cost of which was presumably covered in the bid. Plaintiff seeks review under the Wunderlich Act, 41 U.S.C. § 322 (1970), saying that, as a matter of law, such a loss of equipment is compensable under the Changes clause. In the alternative, plaintiff says that the equipment loss was a result of a breach of the Government's warranty of its specifications and thus is compensable as a breach claim brought in this court.

Defenses raised by defendant include among others the admitted fact that the loss was insured and thus that plaintiff has been fully paid for the loss. Our ruling on the so-called insurance issue makes it unnecessary to address the others. Whether the claim is based on breach of warranty or on a theory of constructive change the result is still governed by the disposition of the threshold issue of the effect of insurance coverage carried on the lost equipment. As we read the contract, plaintiff cannot recover by either route.

■■ The policy of granting equitable adjustments under contract clauses is limited by the sense of what is or may be equitable. Thus, within the contract the parties have provided for compensation to contractors for some work not previously contemplated in the contract, made necessary by Government action or, as in this case, error. But the duty of the Government to the contractor does not extend beyond the contract and the general procurement process, for plaintiff of course does not prosecute a tort claim in this court, nor did it before the Board. In the primary portion of its claim before the Board, Eng. BCA No.

2768, plaintiff recovered for all the extra work made necessary by the cave-in. The Government's duty has been performed through the administrative relief provided. The contractor is whole, in no worse position that if the contract had been performed without a hitch. In Bruce Constr. Corp. v. United States, 324 F.2d 516, 518–519, 163 Ct.Cl. 97, 101 (1963) this court said:

> But the standard of reasonable cost 'must be viewed in the light of a *particular* contractor's cost * * *' (footnote omitted), and not the universal, objective determination of what the cost would have been to other contractors at large. (Emphasis in original.)

While that case was concerned with quantum of the adjustment, the language can be applied equally as a test as to *who* is entitled to recover. If the contractor has incurred no cost, there is neither necessity nor rationale for an adjustment. In *Bruce, supra,* at 100, 324 F.2d 518, we said:

> Equitable adjustments in this context are simply corrective measures utilized to keep a contractor whole when the Government modifies a contract. Since the purpose underlying such adjustments is to safeguard the contractor against increased costs engendered by the modification, it appears patent that the measure of damages cannot be the value received by the Government, but must be more closely related to and contingent upon the *altered position in which the contractor finds himself by reason of the modification.* * * * (Emphasis supplied.)

Plaintiff takes the position that it has not been paid by the insurance company for its loss, but merely loaned an amount equal to its loss "repayable only in the event and to the extent of any net recovery" in any legal action brought in furtherance of claims for liability for the damage covered by the loan agreement. The courts have generally found this type of insurance loan arrangement to be an acceptable business practice and

have given them effect as intended. *See, e. g.,* Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918); Dixey v. Federal Compress & Warehouse Co., 132 F. 2d 275 (8th Cir., 1942).

■ Accepting that the proceeds accompanying this agreement were a loan and not insurance proceeds of the underlying insurance contract, plaintiff is the only party entitled to press this action in this court, but it is still an insured contractor and had a valid claim against its insurer when the disaster happened. Therefore, we must necessarily focus on the costs suffered by plaintiff, and only its necessary costs, with regard to the claim it is now pressing. Under the circumstances presented in this case, plaintiff is now financially whole and suffers no loss regardless of this court's decision. The insurance loan agreement clearly provides that plaintiff will be required to repay to its insurer only the amounts, if any, recovered in this action. If plaintiff does not recover, it need not repay the loan. Thus plaintiff is not in the position of most plaintiffs in this court who have suffered an actual loss and are seeking to be made whole.

■ The construction contract included a clause entitled General Condition 8 which states:

> GC–8. *Protection of Material and Work.* The contractor shall at all times protect and preserve all materials, supplies and equipment of every description * * *

Defendant argues that the word "protect" places the risk of loss or damage upon plaintiff. Plaintiff suggests that this is a strained reading of the clause and beyond the "usual and ordinary meaning" admonition of Hotpoint Co. v. United States, 117 F.Supp. 572, 127 Ct. Cl. 402, cert. denied, 348 U.S. 820, 75 S. Ct. 32, 99 L.Ed. 647 (1954). We agree with plaintiff that this clause, in and of itself, does not place the risk of loss caused by defective Government specifications on the contractor. The clause

goes on to recite that if the contractor failed to protect equipment, the Government would do so and transfer the cost of protection to the contractor. Plaintiff suggests that the loss anticipated by the clause was damage by the elements. While plaintiff's contract of insurance covering the drill jumbos is not in evidence, it is fair to assume a fairly broad coverage, including damage due to weather. Therefore, plaintiff at least partially would have been motivated to insure its equipment in part because General Condition 8 wherever encountered in Government contracts made clear that the Government did not intend to act as caretaker of the equipment.

It is possible that the insurance coverage involved here was a general policy, the cost of which was carried by plaintiff as a general cost of doing business, and was not specifically intended to apply only to this particular project or even all Government work, and was not made necessary by plaintiff's reading of this particular contractual provision. The General Condition 8 clause is therefore not, by itself, dispositive of the insurance issue, but clarifies the intention of the parties as to who was to bear the risk of loss.

■ It is by now a basic canon of Government contract interpretation, in which a whole body of distinct and special contract law has developed, that the Armed Services Procurement Regulations (hereinafter, ASPR) are "law which governs the award and interpretation of contracts as fully as if [they] were made a part thereof. * * *" Chris Berg, Inc. v. United States, 426 F.2d 314, 317, 192 Ct.Cl. 176, 182 (1970); Newport News Shipbuilding & Dry Dock Co. v. United States, 374 F.2d 516, 179 Ct.Cl. 97 (1967); 32 C.F.R. § 1.102. Even where not directly binding they provide "useful and valuable guidelines for the resolution of all Government contracts cases, * * *." Firestone Tire & Rubber Co. v. United States, 444 F.2d 547, 554, 195 Ct.Cl. 21, 35 (1971). Insofar as the regulations cited by defendant are applicable, they

constitute constructive notice to contractors to the extent they are published in the Federal Register. *See,* 5 U.S.C. § 552; 44 U.S.C. §§ 1505, 1507 (1970); Lynsky v. United States, 126 F.Supp. 453, 456, 130 Ct.Cl. 149, 153 (1954); Coat Corp. of America v. United States, 105 F.Supp. 832, 834, 123 Ct.Cl. 176, 196 (1952).

Defendant relies heavily on the ASPR to support its proposition that insurance taken out by the contractor inures to the benefit of the Government, to reduce its contract liability. While we do not hold that this is universally so, the ASPR, taken together with the contract provisions and the particular facts of the case, do provide significant guidance here. Therefore, some discussion of the particular regulations is in order.

█ The ASPR are intended to provide guidance in the negotiation and administration of defense contracts from the time of pre-award preparation until, as mentioned previously, judicial resolution of contract disputes. The provisions cited by the Government as having relevance to this dispute were in effect prior to the effective date of the contract in issue and all had been published in the Federal Register. They are: 32 C.F.R. §§ 10.400 et seq., 15.106, 15.205 et seq., 15.400 et seq., and 15.600 et seq., as amended by 1964 Supp.

Sections 10.400 and 10.401 set forth a Government policy with respect to insurance, that the Government is "not concerned with the insurance programs of fixed-price contractors" with certain exceptions. However, §§ 10.501 et seq. deal with these exceptions and a reading of these sections reveals that the insurance with which the Government is not ordinarily concerned is that which covers liability to third parties, a type which is not involved here.

Subpart B, § 15.201 and ff. prescribe *Principles and Procedures for use in Cost-Reimbursement Type Supply and Research Contracts with Commercial Organizations.* §§ 15.205–16 thereof, set forth in the appendix, deals extensively with the allowability of insurance costs and insurable losses. By § 15.600 and § 15.603(b) these cost principles also apply to other contracts whenever an occasion arises wherein the acceptability of a particular item of cost becomes an issue, as in change orders, termination settlements, or other "retrospective pricing." By § 15.106 there are also brought into play for negotiation of fixed price contracts the same principles, "where appropriate." § 15.401 *Construction Contracts* deals only with such contracts if of cost reimbursement type. By § 15.205 "insurance" requires special consideration. We think a fixed price construction contractor, such as plaintiff, taking all these provisions together, would realize that the Government intended the Cost Principles designated at the head of this paragraph to apply in just about any situation, as appropriate, when a contract price was to be determined or adjusted in light of the allowability of an item of cost. Thus, for example, in case of a change order or termination settlement under the contract here involved, the contractor would expect the Cost Principles to govern.

The contractor looking at § 15.205–16 would know that insurance maintained in connection with the general conduct of the business was an allowable cost, with type and extent of coverage to record with sound business practice, and premium rates to be reasonable. Actual losses which could have been covered by permissible insurance were unallowable unless expressly provided in the contract.

This appears to give the construction contractor a strong incentive to cover his equipment by insurance, for if he fails to do so his losses of such equipment are nevertheless unallowable. The carrot is that in any negotiation turning on allowable costs, the premiums, if reasonable, will be allowable. Prospectively considered, it would seem wholly unreasonable for the Government to put forth such regulations, unless it intends that the insurance the contractor obtains will protect both parties in case of loss, in-

cluding, as here, a loss caused by defective Government specifications. It would be absurd for the Government to bear the premium and not get any protection. Though there was not, here, any negotiation about the insurance, so far as the record shows, contractor's counsel candidly admitted in oral argument that contractor "assembled" the allocable insurance cost with other costs in its overhead expenses, in making up its bid. We have here an "actual loss" which not only could have been, but was, covered by "permissible insurance."

■ We can, like the Board, set aside an instance of Government negligence as not the case before us. We think that the contract, construed as it must be with ASPR, did not provide a warranty that the Government would pay for contractor equipment destroyed or damaged as a result of defective Government specifications. On the contrary, the contractor was expected to protect both itself and the Government with appropriate insurance in such case. Thus the claim herein is inconsistent with the contract. Therefore, it makes no difference whether it is stated as for breach of warranty, or for an equitable adjustment. In either case, it is not maintainable.

■ Plaintiff refers us to a number of decisions in which Contract Appeal Boards have awarded contractors compensation for damage to their equipment caused by Government fault of some kind. Community Power etc. Co., 69–2 BCA ¶ 7963, and Canon Constr. Corp., 69–2 BCA ¶ 7966, may stand as examples. In none of these was the nature of contractor's insurance coverage, and the ASPR provisions respecting insurance, urged upon the Boards as defendant has urged them here upon us, so far as the reports disclose. It may be that some of these losses were excluded from the insurance because below deductible amounts, as the regulation permits. Though we are not bound by the interpretations such Boards give to contract clauses and ASPR provisions, we accord them great respect, as emanating from a

source having expertise. Nevertheless, it does not appear that such interpretations were consciously made here. The citations do not shake our confidence that our conclusions are correct, in the instant case.

For the reasons stated, the plaintiff's motion for summary judgment is denied, the defendant's motion for summary judgment is allowed, and the petition is dismissed.

## APPENDIX

### 32 C.F.R. § 15.205–16 (1961)

§ 15.205–16 *Insurance and Indemnification*

(a) Insurance includes insurance which the contractor is required to carry, or which is approved, under the terms of the contract, and any other insurance which the contractor maintains in connection with the general conduct of his business.

(1) Costs of insurance required or approved, and maintained, pursuant to the contract, are allowable.

(2) Costs of other insurance maintained by the contractor in connection with the general conduct of his business are allowable subject to the following limitations:

(i) Types and extent of coverage shall be in accordance with sound business practice and the rates and premiums shall be reasonable under the circumstances;

(ii) Costs allowed for business interruption or other similar insurance shall be limited to exclude coverage of profit;

(iii) Costs of insurance or of any provision for a reserve covering the risk of loss of or damage to Government property are allowable only to the extent that the contractor is liable for such loss or damage and such insurance or reserve does not cover loss or damage which results from willful misconduct or lack of good faith on the part of any of the contractor's directors or officers, or other equivalent

representatives, who has supervision or direction of

*(a)* all or substantially all of the contractor's business, or

*(b)* all or substantially all of the contractor's operations at any one plant or separate location in which the contract is being performed, or

*(c)* a separate and complete industrial operation in connection with the performance of the contract;

(iv) Provisions for a reserve under an approved self-insurance program are allowable to the extent that the types of coverage, extent of coverage, and the rates and premiums would have been allowed had insurance been purchased to cover the risks; and

(v) Costs of insurance on the lives of officers, partners, or proprietors are allowable only to the extent that the insurance represents additional compensation.   *   *   *

(3) Actual losses which could have been covered by permissible insurance (through an approved self-insurance program or otherwise) are unallowable unless expressly provided for in the contract, except:

(i) Costs incurred because of losses not covered under nominal deductible insurance coverage provided in keeping with sound business practice, are allowable; and

(ii) Minor losses not covered by insurance, such as spoilage, breakage, and disappearance of small hand tools, which occur in the ordinary course of doing business, are allowable.

(b) Indemnification includes securing the contractor against liabilities to third persons and any other loss or damage, not compensated by insurance or otherwise. The Government is obligated to indemnify the contractor only to the extent expressly provided for in the contract, except as provided in paragraph (a) (3) of this section.