**WINSTON BROS. COMPANY et al.,**
**Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 4–73–Civil 30.**

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 28, 1973.

Ronald D. Olson, Carlsen, Greiner & Law, Minneapolis, Minn., for plaintiff.

Neal J. Shapiro, Asst. U. S. Atty., Minneapolis, Minn., for defendant.

## MEMORANDUM

LARSON, District Judge.

This is an action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b),

seeking $81,238.39 reimbursement for damages to two drill jumbos. The pieces of heavy construction equipment were buried and subsequently demolished in a cave-in of a portion of a tunnel being excavated in connection with the DeGray Dam and Reservoir Project in Clark County, Arkansas. The case comes here after adjudications by the Contracting Officer, Board of Contract Appeals for the Army Corps of Engineers, and the Court of Claims, all of which have denied the claim.

Plaintiffs Winston Brothers Company and Green Construction Company, d/b/a Winston-Green, are engaged in the heavy construction industry. They assert breach of contract, breach of warranty, and negligence on the part of the Government in preparing and issuing allegedly deficient plans and specifications in connection with the project, resulting in the cave-in and attendant damages incurred by Winston-Green. Additionally, a subrogation claim is asserted by Connecticut Fire Insurance Company (Connecticut Fire), Winston-Green's insurer.

The Government advances two dispositive arguments in its motion for summary judgment: the Court lacks jurisdiction over contract claims being asserted here, and the other claims are barred by the statute of limitations. Because the pleadings and other matters before this Court establish as a matter of law that the claims cannot be heard by this Court, the Government's motion will be granted.

Winston-Green and the Department of Army, Corps of Engineers, made a $4,687,947.35 contract (later modified to $5,145,789.05) on January 10, 1964, under which Winston-Green was to construct a 1,684 foot tunnel and appurtenances in connection with the DeGray Project. Plans and specifications were to be furnished by the Corps.

Work on the upstream portal of the tunnel began August 11, 1964, with excavation to be done mainly by blasting. On August 20, 1964, about three hours and forty-five minutes after a misfired dynamite blast, a large cave-in occurred in which the two drill jumbos and other equipment were ruined. Connecticut Fire paid Winston-Green the full amount of the claimed loss in a November 20, 1964, transaction cast in the form of a "loan" agreement, repayment contingent on Winston-Green's recovery from the Government.

Since then Winston-Green has thrice attempted to secure reimbursement from the Government. First, a claim was filed with the Contracting Officer on May 19, 1965, pursuant to the contractually specified procedures for handling disputes under the contract. On July 1, 1965, the Officer ruled that there was no provision in the contract for reimbursement for losses of this kind.

Winston-Green then appealed to the Board of Contract Appeals on July 13, 1965. After hearing extensive evidence, the Board on September 6, 1968, ruled that the collapse resulted from the Corps' deficient design of rock bolts shoring up the walls of the tunnel. Lacking authority to hear tort allegations, both the Contracting Officer and Board ruled only on the contractual aspect of the claim. Accordingly, the Board's finding that the Government was "responsible" for the cave-in was not necessarily indicative of fault cognizable under tort law.

Although granting time extension and price adjustments, the Board affirmed the denial of reimbursement for the damaged equipment. Its decision was grounded on relevant provisions of the contract and the Armed Services Procurement Regulations incorporated therein leaving the risk of this kind of loss on the contractor. Eng. BCA Nos. 2732 and 2768, 68–2 BCA Par. 7240.

Winston-Green next instituted suit in the Court of Claims on June 20, 1969, seeking review under the Wunderlich Act, 41 U.S.C. § 322 (1970), and, in the alternative, claiming breach of warranty. In an opinion rendered April 14, 1972, the

Court agreed with the reasoning of the Board. It found relevant contractual provisions precluding the contractor's claims and also rejected the contention of a Government "warranty" to pay for damages to equipment due to defective specifications. Winston Brothers Co. v. United States, 458 F.2d 49, 198 Ct.Cl. 37 (1972). The instant action was commenced January 15, 1973.

■ Winston-Green's breach of contract claim must be dismissed because this Court lacks jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a)(2), to hear contractual claims against the Government in excess of $10,000. Akin Mobile Homes, Inc. v. Secretary of Housing & Urban Development, 475 F.2d 1261, 1262 (5th Cir. 1973); Putnam Mills Corp. v. United States, 432 F.2d 553, 554 (2d Cir. 1970); Murray v. United States, 132 App.D.C. 91, 405 F.2d 1361, 1366 (1968).

The nature of the warranty claim is unclear from the pleadings. The Court of Claims did treat a warranty claim as being based on the contract, but this is understandable in view of that Court lacking jurisdiction over claims sounding in tort. 28 U.S.C. § 1491. If Winston-Green is likewise here presenting a claim under the contract, it would meet the same fate of dismissal under the Tucker Act as the breach of contract allegation.

■ It is possible, however, to construe the warranty allegation here as constituting a claim of strict liability in tort. See Annot., Products Liability—Strict Liability, 13 A.L.R.3d 1057 (1967). Rather than being precluded by the Tucker Act, such a claim could be asserted under the Federal Torts Claims Act.[1] But it would be barred by the same statute of limitations defense that the Court finds fatal to the negligence and subrogation claims.

■ The applicable statute of limitations for tort claims against the Government provides as follows:

"A tort claim . . . shall be forever barred unless action is begun within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b) (1964 ed.), Act of April 25, 1949, ch. 92, § 1, 63 Stat. 62.

This provision governs all claims accruing prior to January 18, 1967, even if a civil action is brought subsequent to that date. Katzer v. United States, 342 F.Supp. 1088 (E.D.Wis.1972); Rygg v. United States, 334 F.Supp. 219 (D.N.D. 1971); Whealton v. United States, 271 F.Supp. 770 (E.D.Va.1967).

Claims arising after that date are governed by the amended statute of limitation. 28 U.S.C. § 2401(b), as amended, Act of July 18, 1966, Pub.L. 89–506, § 7, 80 Stat. 307. This version requires a claim to be filed with the pertinent administrative agency in all tort claims and then gives the claimant six months after denial of the claim to sue in District Court.

■■ It is well established that determination of when a claim accrues for purposes of beginning the statute of limitations under § 2401(b) is a question of Federal law.[2] E. g., Ashley v. United States, 413 F.2d 490 (9th Cir. 1969); Mendiola v. United States, 401 F.2d 695 (5th Cir. 1968); Kington v. United States, 396 F.2d 9 (6th Cir.), cert. denied, 393 U.S. 960, 89 S.Ct. 396, 21 L.Ed.2d 373 (1968); Kossick v. United States, 330 F.2d 933 (2d Cir.), cert.

---

1. Whether the alleged design deficiency involves rendition of services, rather than provision of products, and hence would not be cognizable under strict liability law is a question the Court does not now consider. See Balkowitsch v. Minneapolis War Memorial Blood Bank, Inc., 270 Minn. 151, 132 N.W.2d 805 (1965); *See generally* Annot., Strict Tort Liability-Services, 29 A.L.R.3d 1425 (1970).

2. The only case holding to the contrary and resolving the issue on the basis of the law of the State of occurrence, Tessier v. United States, 269 F.2d 305, 310 (1st Cir. 1959), has been discredited for having been predicated on an erroneous interpretation of Fifth Circuit law that has since been clarified to plainly denote the matter as being one of Federal law. Quinton v. United States, 304 F.2d 234, 240 (5th Cir. 1962).

denied, 379 U.S. 837, 85 S.Ct. 73, 13 L. Ed.2d 44 (1964); Hungerford v. United States, 307 F.2d 99 (9th Cir. 1962). Application of Federal law is bottomed on the manifested congressional intention of achieving national uniformity regarding the time period during which tort suits against the Government can be bought. U.S.Code Cong.Service, 81st Cong., 1st Sess., pp. 1226–1229 (1949); Hungerford v. United States, *supra,* 101; Quinton v. United States, n. 2, *supra,* 236.

■ Although it is hazardous to assign an all-purpose definition of when a claim first accrues for purposes of triggering a limitations statute, United States v. Dickinson, 331 U.S. 745, 748, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), it can safely be said that Winston-Green's tort claims accrued when the cave-in occurred, August 20, 1964. It was this event that gave rise to the liability being asserted here, establishing a "definitely ascertainable date" from which the time period can readily be measured. Foote v. Public Housing Commissioner, 107 F.Supp. 270, 274 (W.D.Mich.1952). There are no difficulties presented here with regard to lack of actual or constructive knowledge on Winston-Green's part that it had at that time suffered an injury for which legal relief might be available. *See, e. g.,* Kossick v. United States, *supra,* 936; Quinton v. United States, n. 2, *supra,* 240–241; Tessier v. United States, n. 2, *supra,* 309. Since this event transpired prior to the effectiveness of the amended statute and more than eight years before this action was filed, the old version of § 2401(b) bars these claims.

■ There is no merit to Winston-Green's contention that the administrative and/or Court of Claims proceedings tolled the statute. In determining whether the limitations period has been tolled, the basic question is one "of legislative intent whether the right shall be enforceable . . . after the prescribed time." Burnett v. New York Central R. Co., 380 U.S. 424, 426, 85 S.

Ct. 1050, 1053, 13 L.Ed.2d 941 (1965), quoting Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 360, 64 S.Ct. 128, 88 L.Ed. 96 (1943).

Aside from the aforementioned dominant desire for national uniformity, the legislative history of § 2401(b) is relatively unenlightening regarding congressional purposes and policies underlying the limitations provisions. The Senate Report elaborating on the 1966 amendment demonstrates a distaste for stale claims, a sentiment common to statutes of limitations. S.R.No.1327, U.S.Code Cong. & Admin.News, 89th Cong., 2d Sess., pp. 2515, 2516 (1966). To the extent that tolling is allowed, this goal of avoiding ancient claims is undermined.

Throughout the legislative history there are no congressional remarks indicative of a tolling intent. The reviser's notes concerning the increasing of the limitations period from one to two years in 1949 are likewise "silent on any intent to have any tolling provisions wash into the Federal Tort Claims Act." Glenn v. United States, 231 F.2d 884, 886 (9th Cir.), cert. denied, 352 U. S. 926, 77 S.Ct. 223, 1 L.Ed.2d 161 (1956).

■ Moreover, where one has a choice of remedies, pursuing one of them does not toll the statute of limitations as against an action based on another remedy. 54 C.J.S. Limitation of Actions § 247 (1948); O'Callahan v. United States, 451 F.2d 1390, 1393, 196 Ct.Cl. 556 (1971). Winston-Green's initiations of the administrative and Court of Claims proceedings prior to commencement of this action were permissive, not mandatory. The availability of these other optional avenues of relief did not preclude the bringing of an action under the Tort Claims Acts. Wham v. United States, 86 U.S.App.D.C. 128, 180 F.2d 38, 41 (1950); *see also* 1 Jayson, Handling Federal Tort Claims, §§ 166.02–166.03 (1972 ed.)

Consequently, the rationale frequently expressed for tolling—legal disablement to sue—is not present in this case.

*See, e. g.,* 51 Am.Jur.2d, Limitation of Actions § 170 (1970); 54 C.J.S. Limitation of Actions, *supra,* § 247.

Numerous cases arising under the Tort Claims Act support this conclusion. Mendiola v. United States, *supra* (no tolling pending termination of State workmen's compensation suit despite local statute providing for tolling); Kington v. United States, *supra* (filing of actions in State and Federal courts subsequently voluntarily dismissed do not toll statute); Humphreys v. United States, 272 F.2d 411 (9th Cir. 1959) (filing of Federal court suit subsequently voluntarily dismissed in order to refile in more convenient forum does not toll statute); Covington v. United States, Department of Air Force, 303 F.Supp. 1145 (N.D.Miss.1969) (filing of suit in Court of Claims later dismissed for lack of jurisdiction does not toll statute); Davila Barcelo v. United States, 271 F. Supp. 988 (D.P.R., 1967) (processing of workmens' compensation claim does not toll statute); Jones v. United States, 126 F.Supp. 10 (D.D.C.1954), aff'd on other grounds, 97 U.S.App.D.C. 81, 228 F.2d 52 (1955) (filing of State court suit subsequently dismissed does not toll statute).

The only case in which the desired tort relief was granted is distinguishable. In Whistler v. United States, 252 F.Supp. 913 (N.D.Ind.1966), a tort claim was filed in a State court within two years of the time of accrual against a Federal government employee in his private capacity. Although the case was removed to Federal court more than two years after the claim accrued as a result of the Government's certification that the employee was acting within the scope of his duties, 28 U.S.C. § 2679(d), it was held that the action was not barred by § 2401(b). The court reasoned that suit had been timely filed in a court of proper jurisdiction, and that the removal was "entirely outside the control of the responsibility of the plaintiff." 252 F.Supp. at 916.

In contrast, Winston-Green had plenary control over the procedural path that its claims have traversed. Winston-Green has decided when, where, and how it would assert its various claims for redress against the Government. Unlike *Whistler,* the forums previously chosen for adjudications lacked jurisdiction over the tort claims presented here.

Although the procedural patterns of the cases that have invariably rejected the tolling argument differ from the instant suit, the principle of those cases is clear: the filing or pendency of permissive non-Federal Tort Claims Act actions does not toll § 2401(b). This conforms to the rule that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

The many cases holding that disability to sue does not toll § 2401(b) fortify this strict construction of the language of the statute. *E. g.,* Brown v. United States, 353 F.2d 578 (9th Cir. 1965) (being age of minority does not toll the statute); Pittman v. United States, 341 F.2d 739 (9th Cir.), cert. denied, 382 U. S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965) (no tolling during minority even though guardian ad litem had not been appointed and there was alleged conflict of interest on part of minor's father); Simon v. United States, 244 F.2d 703 (5th Cir. 1957) (no tolling during minority); Foote v. Public Housing Commissioner, *supra* (non-appointment of administrator to bring wrongful death action does not toll the statute). *See also* Soriano v. United States, *supra,* 352 U.S. at 275, 77 S.Ct. 269, 1 L.Ed.2d 306, suggesting that even the outbreak of wartime hostilities would not toll § 2401(b).

These cases exemplify the unbending interpretation that has been given to § 2401(b) in accordance with the mani-

fested legislative goal of the expeditious bringing and resolution of tort claims against the Government. Simply put, tolling is not allowed because "Congress just did not want stale claims lying around under the Federal Torts Claims Act." Pittman v. United States, *supra,* 741–742.

Since they have accrued more than two years prior to the filing of this action and the statute has not been tolled by the pendency of prior proceedings, Winston-Green's tort claims must be dismissed for want of jurisdiction. Mann v. United States, 399 F.2d 672 (6th Cir. 1968); Humphreys v. United States, *supra,* 412.

■ Connecticut Fire, however, argues that its claim for subrogation did not accrue until April 14, 1972, the date of the Court of Claims decision. Not until then, the insurer maintains, was it "judicially apprised" that it would not be repaid the sum it had advanced to Winston-Green. Because this action was filed within nine months of that determination, Connecticut Fire says it is not barred by § 2401(b).

Assuming subrogation is available to the insurer here,[3] this argument lacks merit. As a subrogee with an action sounding in tort, Connecticut Fire's claim accrued at the time of the occurrence of the underlying event giving rise to the Government's liability. American Manufacturers Mutual Insurance Co. v. United States, 453 F.2d 1380, 1382, 197 Ct.Cl. 99 (1972).

■ It is hornbook law that a subrogee has "no greater rights than the one in whose place he is substituted." 83 C.J.S. Subrogation n. 3, *supra,* § 14. It has been established that Winston-Green had no rights against the Government as of the time this suit was filed. Section 2401(b) is not merely procedural, but it is substantive; its lapsing deprives this Court of jurisdiction over the contractor's claims. Mann v. United States, *supra;* Humphreys v. United States, *supra.* Since the insured had no right of action here, none passed to the subrogee. Phoenix Insurance Company v. Erie and Western Transportation Company, 117 U.S. 312, 321, 6 S.Ct. 750, 29 L.Ed. 873 (1886).

---

3. The Court of Claims held that the relevant insurance provisions of the contract indicate an intent that Winston-Green was to procure insurance for the benefit and protection of both itself and the Government. According to the Court's interpretation of the contract, Winston-Green was obligated to obtain insurance and could, and did, include the cost of premiums in its negotiations with the Government over the price of the contract. If it failed to insure, the Government could do so and charge the cost to Winston-Green. 458 F.2d at 53–54.

The Government now argues that the doctrine of collateral estoppel compels this Court to accept these findings as dispositive of Winston-Green's claims. But since the Court of Claims expressly noted that it was not adjudicating tort claims, 458 F.2d at 54, it cannot be said that its interpretation of the insurance provisions of the contract is binding in this action. Its view of the intent of the parties did not necessarily embody a finding that the insurance provisions were intended to leave the Government unanswerable for its torts.

But the Court of Claims' construction of the contract does lend force to the contention that subrogation would not be available here as a matter of law. Being an equitable doctrine, subrogation is not granted when it would be inequitable or accomplish injustice. 83 C.J.S. Subrogation § 6 (1953). The effect of allowing subrogation here would be that the Government would have to bear derivatively the cost of insurance premiums as well as paying for any losses. Thus, the Government would be paying twice, once for insurance subsumed in the cost of the contract and once for the actual loss.

Such a result would provide unjust enrichment to the insurer, be inequitable, and contrary to sound public policy. 50 Am.Jur., Subrogation §§ 4, 11 (1943). Because of the existence of these "countervailing equities," 83 C.J.S. Subrogation, *supra,* § 6, subrogation would apparently not be available to Connecticut Fire, even if the insurer could hurdle the insuperable statute of limitations obstacle.

Thus, the subrogation claim accrued at the time of the cave-in, or, at the latest, when the "loan" was made. United States Lines, Inc. v. United States, 470 F.2d 487, 489 (5th Cir. 1972). Both of these events occurred during 1964, more than eight years before this suit was brought.[4] Since Connecticut Fire could have at any time thereafter instituted its action for subrogation, its failure to do so in the interim should not now enable it to come into Court at this late date. "[T]he courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights." Burnett v. New York Central R. Co., *supra*, 380 U.S. at 428, 85 S.Ct. at 1054.

Because resolution of the subrogation claim ultimately would depend upon proof of the Government's liability in tort to Winston-Green, the suit would require evidence on matters more than eight years old. Allowing this to occur would subvert the statute of limitations' policy of "preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).

The same reasons that preclude tolling the statute for Winston-Green's claims apply with equal force to the insurer's claims. Accordingly, the subrogation claim. Accordingly, the subrogation tions, cannot survive the rigors of § 2401(b). There being no genuine issue of material fact, summary judgment must be granted for the Government.

---

4. Even if Connecticut Fire is correct in its insistence that its claim accrued contemporaneous with the adverse decision of the Court of Claims, there is yet another reason why the Court lacks jurisdiction to hear the matter. If accruing in 1972, under the revised version of § 2401(b), the insurer would have been required to file an administrative claim, and civil suit could not be filed until that claim was denied. 28 U.S.C. § 2401(b), as amended, Act of July 18, 1966, Pub.L. 89–506, § 7, 80 Stat. 307. There is no indication in the Record that these mandatory procedures were followed after the Court of Claims decision. Because "exact compliance with the terms of consent [of the Government to be sued] is a condition precedent to suit," Simon v. United States, *supra*, 704, this claim cannot be heard if predicated on a 1972 cause of action.