AMOCO OIL COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant,

and

VEPCO, Third-Party Defendant,

and

Allied Towing Corporation, Third-Party Defendant.

No. 67–82L.

United States Claims Court.

Nov. 22, 1983.

R. John Barrett, Norfolk, Va., for plaintiff and third-party defendants. Morton H. Clark, and Vandeventer, Black, Meredith & Martin, Norfolk, Va., of counsel.

Raymond W. Mushal, with whom was Acting Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant. Julie A. Weisman, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

Plaintiff in this action seeks $363,684.80 under section 311(i)(1) of the Federal Water Pollution Control Act (FWPCA), codified at 33 U.S.C. § 1321(i)(1) (1976), as oil spill cleanup expenses recoverable under the FWPCA.

Plaintiff has been fully reimbursed for its cleanup of the oil spill in question by the insurer of the third party which caused the spill. Plaintiff, because it has been fully reimbursed brings this suit, not on its own behalf, but on behalf of the third party's insurer. Essentially, plaintiff contends that under the doctrine of subrogation it can sue under section 1321(i)(1) on behalf of the insurer of the third party responsible for the oil spill.

Defendant, on the other hand, maintains that the doctrine of subrogation is inapplicable to this case because plaintiff is suing on behalf of a third party's insurer. In addition, defendant argues that the assignment of plaintiff's claim to the third party's insurer is invalid under the Assignment of Claims Act, 31 U.S.C. § 203 (1976), current version at 31 U.S.C.A. § 3727 (1982). Therefore, defendant maintains that the present suit should be dismissed since plaintiff has been fully compensated for its cleanup expenses and, thus, cannot sue on its own behalf.

Defendant has moved for summary judgment. Plaintiff opposes defendant's motion. Neither third-party defendant filed a response to defendant's motion. Since both plaintiff and defendant agree that this case presents no disputed factual issues, the case is in a posture appropriate for disposition by summary judgment.

After consideration of the parties' arguments, it is determined that plaintiff cannot recover under section 1321(i)(1) on behalf of itself or, under the doctrine of subrogation, on behalf of the insurer of the third party responsible for the oil spill. The court, therefore, grants defendant's motion for summary judgment.

### I.

The incident which generated the present action took place on June 26, 1977, at plaintiff's marine terminal located at its oil refinery facility in Yorktown, Virginia. On this date, a tugboat owned by Allied Towing Corporation (Allied) positioned itself next to plaintiff's dock in order to tow a

barge loaded with fuel oil to a Virginia Electric Power Company (VEPCO) power plant. While maneuvering next to plaintiff's dock, the tugboat rammed into or collided with the dock and ruptured a 24-inch fuel line owned by VEPCO. As a result of the rupture, the fuel line discharged 60,000 gallons of fuel oil into the York River.

Plaintiff reported the oil spill to the United States Coast Guard, and subsequently hired Industrial Marine Service, Inc. (IMS) to clean up the oil spill. Assisted by two other companies, IMS cleaned up the oil spill which had resulted from the June 26th collision. Plaintiff spent $299,280.43 to clean up the oil spill which occurred directly after the June 26th collision. Plaintiff spent an additional $64,404.37 subsequent to the June 26th collision for pier repairs necessitated by the June 26th collision.

During 1977 and 1978, plaintiff and Allied were involved in litigation concerning the June 26, 1977, collision. Allied filed an action in the United States District Court for the Eastern District of Virginia (*In The Matter of Allied Towing Corp.*, Civ. No. 77–721–N) seeking to limit its liability for the June 26, 1977 collision. In this same action, plaintiff filed a claim against Allied for the damages plaintiff incurred as a result of the accident. In addition, VEPCO also filed claims against Allied and plaintiff for damages which resulted from the collision.

Prior to trial in this civil action, plaintiff, Allied, and VEPCO entered into a settlement agreement. As a result of this settlement agreement, the District Court for the Eastern District of Virginia (Norfolk division) thereafter issued a dismissal order in the case on December 21, 1978. Under this dismissal order, the claims of plaintiff, VEPCO, and Allied were dismissed with prejudice; however, the court dismissed without prejudice plaintiff's claim for oil spill cleanup expenses under the FWPCA.

Under terms of the above-mentioned settlement, Allied paid plaintiff $2,500,000 for damage caused by the collision. Allied's insurer Water Quality Insurance Syndicate (WQIS) paid $299,280.43 of the $2.5 million settlement. This $299,280.43 payment by WQIS to plaintiff was made on behalf of Allied, its insured, to reimburse plaintiff for the cost of cleaning up the oil spill which resulted from the June 26, 1977 collision between Allied's tugboat and plaintiff's dock. Plaintiff was also compensated for the additional $64,404.37 incurred as a result of subsequent pier repairs from the remaining $2.2 million. As part of this settlement agreement, plaintiff assigned to Allied and its insurers plaintiff's right to compensation under the FWPCA. Also as part of the settlement, Allied paid VEPCO $290,000 for damage caused by the collision, and Allied received $15,000 from VEPCO for demurrage.

Almost 5 years after the collision of Allied's tugboat with plaintiff's pier, plaintiff filed the present action for reimbursement of its cleanup expenses.

## II.

33 U.S.C. § 1321(i)(1) (1976) allows "an owner or operator of a vessel or onshore facility or an offshore facility" to bring suit in this court against the United States for reimbursement of the costs incurred in the cleanup of an oil spill. In order to recover under section 1321(i)(1), the owner or operator must show that, "such discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether such act or omission was or was not negligent * * *." 33 U.S.C. § 1321(i)(1) (1976). If a party prevails in an action under section 1321(i)(1), it is reimbursed from the fund set up pursuant to 33 U.S.C. § 1321(k) (1976).

Plaintiff's present action is founded upon the contention that the doctrine of subrogation applies to the relationship between WQIS and itself. Essentially, plaintiff argues that WQIS became plaintiff's subrogee by virtue of WQIS's payment of plain-

tiff's cleanup expenses for Allied.[1] Plaintiff cites *Quarles Petroleum Co. v. United States,* 213 Ct.Cl. 15, 551 F.2d 1201 (1977), as authority for the proposition that an owner or operator can sue under section 1321(i)(1) on behalf of its subrogee. Plaintiff maintains that under *Quarles Petroleum Co. v. United States, supra,* it is entitled to sue on behalf of its purported subrogee WQIS.

Plaintiff's argument is premised upon a mistaken interpretation of the doctrine of subrogation and a misapplication of the *Quarles* decision. The Court of Claims defined the doctrine of subrogation in *First National City Bank v. United States,* 212 Ct.Cl. 357, 548 F.2d 928 (1977) (rehr'g en banc) as follows:

> As a general rule, subrogation applies where a party not acting voluntarily, but under some compulsion, pays a debt or discharges an obligation for which another is primarily liable * * *. In such circumstances, the subrogee 'stands in the place' of the original creditor and obtains the equivalent but no greater rights against the *debtor* than held by the original creditor. *Id.* at 212 Ct.Cl. 369, 548 F.2d 936 [citations omitted] [emphasis added].

In the present case, WQIS, Allied's insurer, paid Allied's debt when it reimbursed plaintiff for its oil spill cleanup expenses. Allied, not plaintiff, is the debtor here. Thus, under the doctrine of subrogation, WQIS obtained the rights of plaintiff *against Allied* when it paid plaintiff its cleanup expenses. WQIS received no rights against the United States by virtue of its payment of Allied's debt to plaintiff, and certainly WQIS did not become plaintiff's subrogee with respect to plaintiff's statutory right to seek compensation from the United States under section 1321(i)(1) for cleanup expenses.[2]

Plaintiff's application of *Quarles Petroleum Co. v. United States* to the facts of this case is similarly flawed. In the *Quarles* case, the court held that a party who qualified as an owner or operator under the FWPCA could sue the government under section 1321(i)(1) on behalf of its insured under the doctrine of subrogation. As the court stated in *Quarles Petroleum Co. v. United States, supra,* "the subrogee 'stands in the place' of the insured and obtains equivalent but no greater rights than held by the *insured.*" *Id.* at 213 Ct.Cl. 24, 551 F.2d 1207. (Emphasis added.) Further, in *United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947), the Supreme Court observed: "One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made * * *." It is clear that one cannot acquire by subrogation what another whose rights he claims did not have. *Id.* 332 U.S. at 242, 67 S.Ct. at 1603. "An

---

1. In *United States v. Aetna Surety Co.,* 338 U.S. 366, 380–81, 70 S.Ct. 207, 215–16, 94 L.Ed. 171 (1949) it was held that a subrogee (here WQIS) who has paid the loss suffered by its insured (here Allied) is the only real party in interest and must sue in its own name. It is clear that WQIS is the real party in interest since it paid, plaintiff, on behalf of Allied, for the clean-up expenses plaintiff incurred. *See Wellen Oil Co. v. United States,* 1 Cl.Ct. 98, 100, 554 F.Supp. 442, 443 (1982). This is not to say, however, that WQIS has a viable claim to prosecute under the Federal Water Pollution Control Act (FWPC), codified at 33 U.S.C. § 1321(i)(1) (1976).

2. Plaintiff contends in its Memorandum in Opposition to Summary Judgment that under Virginia law WQIS would be subrogated to plaintiff's right to sue the government under section 1321(i)(1). However, even the source which

plaintiff cites as authority for this assertion does not support plaintiff's contention since it states: "The doctrine of subrogation in the last analysis is that one who has the right to pay and does pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed *against that other* * * *." 18 Michie's Jurisprudence, Subrogation § 2, p. 4 (1982) (emphasis added). In any event, under the circumstances here involving the interpretation of a federal law by a federal court, this court is not bound by state case law on subrogation. *See S.E.C. v. Variable Annuity Life Ins. Co.,* 359 U.S. 65, 69, 79 S.Ct. 618, 620, 3 L.Ed.2d 640 (1959); *United States v. County of Allegheny,* 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943).

insurer can take nothing by subrogation except such rights as the insured had." *United States v. United Services Automobile Ass'n.*, 238 F.2d 364, 366 (8th Cir.1956). In the present case, the insurer-insured relationship was between Allied and WQIS, no relationship existed between plaintiff and WQIS. Consequently, *Quarles Petroleum Co. v. United States, supra,* is inapposite to the present case.[3]

In any event, whether plaintiff's claim to subrogation is viewed as discussed in *First National City Bank v. United States, supra,* or as discussed in *Quarles Petroleum Co. v. United States, supra; United States v. Munsey Trust Co. supra,* and *United States v. United Services Automobile Ass'n., supra,* it is clear, as far as plaintiff is concerned in this case, that subrogation is not for application.

■ Moreover, the allowance of plaintiff's suit on behalf of WQIS would be directly contrary to the intent which Congress had when it enacted section 1321 of the FWPCA. Congress intended that the party responsible for an oil spill bear the cost of cleaning up that spill. The court in *Reliance Ins. Co. v. United States,* 230 Ct.Cl. ——, ——, 677 F.2d 844, 849 (1982) articulated the congressional intent behind section 1321 when it stated: "After lengthy extensive discussion [on the FWPCA], Congress determined that a system of absolute liability with specified limits best protected the public interest. Such a system, it was felt, properly placed the cost of an oil spill

on the responsible party, and not on the general public." *See* S.Rep. No. 91–351, 91st Cong., 1st Sess. 5 (1969), *reprinted in* U.S.Code Cong. & Admin.News 1970, p. 2691. The allowance of plaintiff's suit on behalf of WQIS would have a directly opposite effect; it would place a major part of the burden of oil spill cleanup on the public treasury. The reason for such a result is the limit on third party liability in 33 U.S.C. § 1321(g) (Supp. II 1978). This section sets a maximum amount which a third-party vessel owner or operator responsible for an oil spill is obligated to pay the government for the cleanup of a spill. Under section 1321(g), a third-party vessel owner or operator is liable for cleanup expenses beyond the liability limit only when the discharge is willful.[4] Consequently, when a discharge is not willful and the cost of cleanup exceeds the vessel owner's liability limit, the government is unable to recover the full cost of an oil spill cleanup from a third-party vessel owner or operator responsible for causing the spill. Therefore, if plaintiff's argument prevailed and the government reimbursed the third-party's insurer for the full cost of the cleanup, the public treasury would end up paying for all cleanup expenses. In effect, the logical result of plaintiff's argument is that the government becomes the third-party's insurer.[5]

■ Moreover, since WQIS is not subrogated to plaintiff's rights under section 1321(i)(1), the assignment by plaintiff to

---

**3.** Plaintiff also relies on *Penn Tanker Co. v. United States,* 409 F.2d 514 (5th Cir.1969). That case, however, is equally inapposite. In *Penn Tanker,* the court allowed plaintiff to sue the government because plaintiff and the government were joint tortfeasors, and plaintiff had paid the full settlement amount to the widow of the injured party. The court allowed plaintiff to be indemnified to the extent that the government contributed to the seaman's injury. The *Penn Tanker* case is clearly inapplicable here since the government was not in any way responsible for the June 26, 1977, collision or resultant oil spill.

**4.** 33 U.S.C. § 1321(g) (Supp. II 1978) provides in pertinent part:
"If such third party was the owner or operator of a vessel which caused the discharge of oil or

a hazardous substance in violation of subsection (b)(3) of this section, the liability of such third party under this subsection shall not exceed, in the case of an inland oil barge $125 per gross ton of such barge, or $125,000, whichever is greater, and in the case of any other vessel, $150 per gross ton of such vessel (or, for a vessel carrying oil or hazardous substances as cargo, $250,000), whichever is greater."

**5.** In fact, it is reasonable to surmise that the third-party liability limit in section 1321(g) provided the motivation for the present suit. If plaintiff were successful in the present action, WQIS would only have to reimburse Allied the amount it is liable under section 1321(g) since the government, not Allied, would have to bear the remaining cost of the cleanup.

WQIS of its cause of action under section 1321(i)(1) is subject to the requirements of the Assignment of Claims Act (ACA), 31 U.S.C. § 203 (1976). *See Quarles Petroleum Co. v. United States, supra,* 213 Ct.Cl. at 25, 551 F.2d at 1207. The ACA provides that in order for an assignment of a claim against the United States to be valid the claim must have been allowed, the amount due must have been ascertained, and the warrant for payment issued prior to the time of the assignment. Unless these statutory formalities are observed, the assignment is absolutely null and void. *Segal v. Rochelle,* 382 U.S. 375, 382, 86 S.Ct. 511, 516, 15 L.Ed.2d 428 (1966); *Hodes v. United States,* 111 Ct.Cl. 370, 76 F.Supp. 1021 (1948).

In the present cases, none of the statutory requirements necessary for a valid assignment were met. The claim had not been allowed, nor had an amount due been fixed, nor had a warrant for payment been issued. Therefore under 31 U.S.C. § 203 (1976), the assignment to WQIS of plaintiff's claim against the government under section 1321 is null and void. This conclusion comports with the basic purposes of the ACA since it was enacted to "prevent fraud, control multiple litigation, and confine government dealings to a very limited number of persons or entities." *Quarles Petroleum Co. v. United States, supra,* 213 Ct.Cl. at 25, 551 F.2d at 1207. *See also United States v. Shannon,* 342 U.S. 288, 291–292, 72 S.Ct. 281, 283–284, 96 L.Ed. 321 (1952); *Bernard C. Kingsbury, Jr. v. United States,* 215 Ct.Cl. 136, 144, 563 F.2d 1019, 1024 (1977). The voiding of plaintiff's assignment to WQIS by enforcing the requirements of the ACA reduces the number of parties with an interest in the current litigation and also ensures that the govern-

ment will have to deal only with those parties which were directly involved in the collision and oil spill at issue.

Furthermore, plaintiff cannot sue under section 1321(i)(1) on its own behalf as it has been fully compensated for its cleanup expenses by WQIS. Since plaintiff is financially whole, it has no claim for the $363,684.80 money damages it seeks to recover herein.[6] *See Winston Bros. Co. v. United States,* 198 Ct.Cl. 37, 42, 458 F.2d 49, 52 (1972); *cf. S.W. Aircraft v. United States,* 213 Ct.Cl. 206, 551 F.2d 1208 (1977); *see also Harleysville Mutual Ins. Co. v. United States,* 230 Ct.Cl. —— (judgment order of February 2, 1982). In order to assert a claim cognizable by this court, plaintiff must assert a claim for money damages. *United States v. King,* 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1501–02, 23 L.Ed.2d 52 (1969). Plaintiff here is attempting to recover expenses for which it has already been reimbursed. Accordingly, plaintiff has no claim for money damages and, therefore, no claim cognizable by this court.

### CONCLUSION

Defendant's motion for summary judgment is granted, with plaintiff's complaint and the third-party defendants' Petitions of Interest to be dismissed.

---

**6.** As indicated previously WQIS paid plaintiff, on Allied's behalf, $299,280.43 for oil spill cleanup work. There is some uncertainty as to whether or not the remaining $64,404.37, which plaintiff was paid out of other settlement proceeds, involved oil spill cleanup work. There is some indication in the materials at hand that suggest that this sum was expended in pier restoration work and that any oil spills that occurred relative thereto were minimal. In any event, since WQIS was, as Allied's insurer, responsible for payment of all oil spill costs generated by the collision in question, it is not unreasonable to conclude that had the $64,404.37 involved oil cleanup expense it would have been paid as such by WQIS. Since it was not, it is concluded that such costs were not oil spill costs and thus are not recoverable under section 1321(i)(1) of 33 U.S.C. in any event.