**BRUCE CONSTRUCTION CORPORA-
TION et al.**

v.

**The UNITED STATES.**

**No. 479-60.**

United States Court of Claims.
Nov. 15, 1963.

George S. Flint, New York City, for plaintiffs. Hugh Fulton and Fulton, Walter & Duncombe, New York City, were on the briefs.

Lawrence S. Smith, Washington, D. C., with whom was John W. Douglas, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

DURFEE, Judge.

This case involves a claim for equitable adjustment for the alleged "additional value" of building block that was used in construction of buildings on the Air Force Base at Homestead, Florida.

The principal issue before us is whether plaintiffs have suffered damages as a result of defendant's rejection of a building block and the consequent requirement that plaintiffs substitute a different block, where the price paid for the two different blocks was the same.

Plaintiffs entered into a contract, DA 08–123–ENG–1595, with the Corps of Engineers on September 15, 1954. The contract involved construction of 18 airmen's dormitories, five mess halls and three bachelor officers' quarters. The total contract price was $4,867,605.30.

The buildings were to be constructed of concrete building block with exposed surfaces "of a fine texture generally produced in the Florida area which is suitable for painting as distinguished from 'coarse textured block' produced for the purpose of receiving stucco or plaster * * *." (Paragraph 5–02(c) Materials).

Plaintiffs placed an order for suitable block with a supplier. Subsequently, on or about January of 1955 the contracting officer rejected the concrete block submitted by plaintiffs, and required the use of a "sand block." Plaintiffs then requested additional compensation in the amount of $312,016.60 to defray alleged additional costs. The matter was processed and Modifications Nos. 45 and 46, dated May 13, 1957, and April 4, 1958, respectively, were issued. These Modifications allowed plaintiffs $125,624.39 to compensate them for the cost of additional labor required in handling and placing the block, and for handling and hauling the rejected block. Plaintiffs' claim of $42,415.98 for the alleged additional value of the sand block over and above the value of the originally specified block was denied by the contracting officer and, ultimately, by the Armed Services Board of Contract Appeals.

Though the price which plaintiffs actually paid for the "sand block" was the same as they would have paid for the original block selected, they contend that the fair market value of the sand block was greater than the purchase price. Essentially then, plaintiffs argue that

defendant should not benefit from the bargain price plaintiffs secured from their supplier, but should pay for the actual value of the sand block received by defendant, not merely its actual cost.

Though there is substantial controversy as to the market value of the sand block as of the time of the transaction between plaintiffs and their supplier, for purposes of defendant's motion for partial summary judgment, we are called upon only to decide the narrow question whether "cost" or "fair market value" controls in the award of an equitable adjustment.

 Equitable adjustments in this context are simply corrective measures utilized to keep a contractor whole when the Government modifies a contract. Since the purpose underlying such adjustments is to safeguard the contractor against increased costs engendered by the modification, it appears patent that the measure of damages cannot be the value received by the Government, but must be more closely related to and contingent upon the altered position in which the contractor finds himself by reason of the modification. We held this view in the early case of McFerran v. United States, 39 Ct.Cl. 441 (1904). The contract there involved construction of structures at Fort Ethan Allen. The specifications called for the use of cut stone. The quartermaster in charge required that claimant furnish marble. Judge Weldon, speaking for the court in disallowing the claim, stated (39 Ct.Cl. p. 451):

"* * * The contract was performed in the country of the marble quarries, and as a result of that situation marble becomes a common material in the trimmings of houses. The findings on that point say that it is not shown that the cost of the marble used by the claimant by the direction of the quartermaster was in excess of the cost of good sound stone of best quality and even color. No allowance is made for this item."

Clearly, in that case the holding of the court was based on cost and not on fair market value. The instant case falls squarely under, and is controlled by, McFerran, supra.

The Armed Services Board of Contract Appeals, in its consideration of plaintiffs' case, assumed plaintiffs' statement of law, but held against them on a finding of fact that the price plaintiffs had paid for the stone was actually its fair market value. But fair market value is not the measure of damages in this case. This is not to say that in all cases, historical cost is to be the gauge. The more proper measure would seem to be a "reasonable cost." The concept of "reasonable cost" is not new. Indeed, it has been defined in the following manner:

"A cost is reasonable if, in its nature or amount, it does not exceed that which would be incurred by an ordinary prudent person in the conduct of competitive business. (A.S.P.R. 15–201.3 (1960))"

Use of the "reasonable cost" measure does not constitute "an objective and universal procedure, involving the determination of the reasonable value (or reasonable cost of any contractor similarly situated) of the work involved;"[1] but determination of reasonable cost requires, in and of itself, an objective test. The particular situation in which a contractor found himself at the time the cost was incurred, Appeal of Wyman-Gordon Co., ASBCA 5100 (1959) and the exercise of the contractor's business judgment, Appeal of Walsh Construction Co., ASBCA 4014 (1957), are but two of the elements that may be examined before ascertaining whether or not a cost was "reasonable."

 But the standard of reasonable cost "must be viewed in the light of a *particular* contractor's costs * * *"[2]

1. Spector, Confusion in the Concept of the Equitable Adjustment in Government Contracts. 22 Fed.B.J. 5, at 6 (1962).

2. McBride, Confusion in the Concept of Equitable Adjustments in Government Contracts: A Reply 22 Fed.B.J. 235 at 240.

[emphasis added], and not the universal, objective determination of what the cost would have been to other contractors at large.

To say that "reasonable cost" rather than "historical cost" should be the measure does not depart from the test applied in the past, for the two terms are often synonymous. And where there is an alleged disparity between "historical" and "reasonable" costs, the historical costs are presumed reasonable.

> Since the presumption is that a contractor's claimed cost is reasonable, the Government must carry the very heavy burden of showng that the claimed cost was of such a nature that it should not have been expended, or that the contractors' costs were more than were justified in the particular circumstance.[3]

Applying the "reasonable cost" test to plaintiffs' hypothetical situation of a contractor purchasing blocks in New York State and paying haulage to Florida,[4] would probably result in a disallowance of the haulage costs since the Government could probably overcome the presumption of reasonableness. Conversely, where a claimant contract actually paid a price and then sought to recover on the grounds that the price actually paid did not constitute a reasonable cost, the burden would then be upon claimant to overcome the presumption of reasonableness. This is essentially the position plaintiffs found themselves in both here and before the ASBCA. Plaintiffs did not introduce sufficient or substantial evidence to overcome the presumption that the price paid by them did reflect a reasonable cost of the materials. Indeed, the only evidence introduced was offered to prove the fair market value, and not to prove the reasonableness of the cost.

Though considerable uncertainty seems to exist as to what test has been applied in the past,[5] we think that this court and other courts dealing with the question have applied the reasonable cost test either implicitly or explicitly. For example, the Supreme Court, in United States v. Callahan Walker Const. Co., 317 U.S. 56 p. 61, 63 S.Ct. 113, 115, 87 L.Ed. 49 (1942), a case involving an equitable adjustment for additional work performed, pointed out that, "An 'equitable adjustment' * * * involved merely the ascertainment of the cost of digging, moving, and placing earth, and the addition to that cost of a reasonable and customary allowance for profit * * *." Though the Supreme Court was dealing only with the question of administrative remedies provided in the contract, there is no question but that the decision points to application of a "reasonable cost" test in determining damages.

No doubt some of the uncertainty in this area is due to the fact that in some cases historical or actual cost, reasonable cost and fair market value are the same, while in others, reasonable cost may be the same as either fair market value or historical or actual cost, and in still others, reasonable cost may be neither fair market value nor historical or actual cost.

As plaintiffs themselves point out at p. 6 of their brief:

> " * * * the test of either a downward or upward equitable adjustment should not be actual costs or actual bids, but what the *reasonable cost* would be in each instance. In the ordinary case, this frequently accords with actual cost. But where it does not, this court has refused to accept actual cost to the contractor as determinative." [Emphasis supplied.]

To support this statement, plaintiffs cite F. H. McGraw and Co. v. United States, 130 F.Supp. 394, 131 Ct.Cl. 501 (1955), and Oliver-Finnie Co. v. United States, 150 Ct.Cl. 189, 279 F.2d 498 (1960).

---

3. Supra, note 2 at 240.

4. Plaintiffs' brief p. 4.

5. I. e., footnotes 1 and 2 supra. See also Ginsburg, The Measure of Equitable Adjustments for Change Orders Under Fixed-Price Contracts. Mil.L.Rev. (DA Pam 27–100–14 Oct. 61) p. 123.

From this statement, however, plaintiffs jump to the assumption that reasonable cost is in identity with fair market value. But here plaintiffs err. The two terms are not synonymous. Indeed, in the very cases cited by plaintiffs above, the court held that the determination of damages using a basis of actual cost was necessary " * * * where there is nothing in the record to show that plaintiff's bid was too low, and where it *has not been proved that plaintiff's costs were unreasonable, or that plaintiff was itself responsible for any increased costs * * *.*" Oliver-Finnie Co., supra, 150 Ct.Cl. at 200, 279 F.2d at 506. [Emphasis supplied.] As we said above, there is a presumption that actual costs paid are reasonable. That presumption must be overcome by whichever party alleges its unreasonableness.

■ Plaintiffs here have not been able to overcome the presumption that their actual costs were reasonable, hence they may not recover. From the record, it is clear that the only evidence plaintiffs introduced tended to prove the fair market value of the blocks some eighteen months after the transaction. We are here not required to say that evidence of fair market value subsequent to a transaction is sufficient to prove fair market value at the time of transaction. We do say, however, that evidence of the fair market value of an item some eighteen months after a transaction involving the item does not rebut the presumption that the cost of the item was reasonable *at the time* of the transaction.

Defendant's motion for partial summary judgment is granted, and plaintiff's cross motion is denied. That portion of the petition involving plaintiffs' claim for $42,415.98 for "additional value" of building block, as set forth in the First Count of the petition is, accordingly, dismissed.

LARAMORE, Judge (concurring in the result).

I concur for the reason that the only evidence of value at the time was the invoice showing the price plaintiff paid for the blocks. In the absence of any other evidence of value at the time of the purchase, I would adopt the invoice price as the proper measure of value.