**GENERAL RAILWAY SIGNAL CO., Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

**Civ. A. No. 84–1717.**

United States District Court, District of Columbia.

Nov. 14, 1984.

Paul L. Waldron, Washington, D.C., for plaintiff.

Robert J. Sciaroni, William B. Bircher, Robert L. Polk, WMATA, Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

General Railway Signal Co. ("GRS") and Washington Metropolitan Area Transit Authority ("WMATA") entered into a lump-sum contract covering three phases of the Metro subway project. This is a dispute over the proper amount to be deducted as an equitable adjustment for a change of work eliminating a specific portion of the work covered by the contract. By cross-motions for summary judgment, which have been fully argued, the Court is asked to review the final decision of WMATA's general manager adopting the majority opinion and rejecting the minority decision of the Army Corps of Engineers Board of Contract Appeals dated December 30, 1983, which fixed the credit due WMATA at $1,403,325.

The standard for review in this situation is not in dispute. It is derived from the Wunderlich Act, 41 U.S.C. § 321 et seq. The Board's decision is final and conclusive unless (1) it is erroneous as a matter of law or (2) it is based on findings of fact which are fraudulent, capricious, arbitrary, so grossly erroneous as necessarily to imply bad faith or not supported by substantial evidence on the record as a whole. GRS contends that the Board's decision is not supported by substantial evidence and is based on a misapplication of the appropriate legal standard.

A detailed review of the facts established in the extensive administrative record on file with the Court is unnecessary to resolve this dispute. The basic background facts are not essentially contested and are

fully covered in the Board's comprehensive findings of fact. It is necessary only to focus here on the nature of the work change and the facts relied on by the Board in reaching the disputed equitable adjustment.

GRS's contract required, among other things, the installation of certain wayside equipment for the WMATA automatic train control system and the cables connecting this equipment to the train control room. As originally envisioned under the lump sum contract awarded to GRS, the cables were to be installed by the direct burial method along the right-of-way where the WMATA tracks were at-grade. Direct burial of cable involved excavation of the trench, placement of a stand cushion before running the electrical cable, backfilling and compacting, followed by removal of any excess backfill displaced by the sand and cables. Before any of this work was performed WMATA decided it would provide duct banks for the cable and eliminate the trench work entirely. A price for the new method was negotiated and fixed by agreement. The amount is not in controversy. The work has been performed by the same subcontractor to which GRS had subcontracted the trench work as well as many other electrical aspects of the contract.

This dispute therefore concerns only the amount the original contract price should be reduced by reason of the deleted trench work. This work was part of a large subcontract awarded by GRS which covered almost one-half of GRS's entire contract undertaken for a fixed price lump sum of $42,074,675.30. The subcontractor bid and had also been given a lump sum for its work. When GRS was preparing a unit price schedule as required by WMATA's bid invitation, it asked the subcontractor for a line-item breakdown of its costs. The subcontractor provided such a breakdown, but it was not incorporated into the subcontract.[1] The trenching items for the three phases of the WMATA project totaled

$1,336,500. GRS used the same trenching line-item figures in its unit price schedule.

The Board of Contract Appeals, by a 2–1 decision, adopted this $1,336,500 figure as conclusive proof of the reasonable cost to GRS of performing the deleted work. It added $66,825 to cover GRS's reasonable profit on the deleted work, resulting in the $1,403,325 credit to WMATA.

■ GRS sharply challenges the majority Board's use of these line items as a measure of the true cost of the deleted work. It contends that the actual cost of performing the work had it been performed should be used rather than arbitrary unit price figures. WMATA's own estimates of the actual cost were $652,742, $646,985 and $566,000. GRS had lower estimates.

It is clear that the subcontractor was not bound to perform the work or GRS to pay for the work at the line-item figures. These figures were simply an allocation required by WMATA for administrative purposes from successful bidders under lump-sum contracts. In this instance, the unit price schedule was not used even to schedule progress payments. The figures provided were based on $5 per linear foot, an amount that could not be supported at the hearing and that was obviously merely a loose estimate. The use of any line-item figure of this kind has little value in establishing cost for purposes of equitable adjustment for a reduction-of-work situation. The undisputed wide gap between the estimated actual cost for performing the work and the dubious inference the majority drew from the line items as to actual or reasonable cost of performance fully demonstrates the unreliability of the unit price schedule on which the Board rested its conclusions as to cost. The majority departed from any conclusion that could have been made on the record by a reasonable person and gave a windfall to WMATA.

---

1. By the time this dispute came before the Board many years after the contract and subcontract were entered into in 1971, the subcontractor's work papers used in arriving at the breakdown figures had been destroyed in regular course, and the amount that would have been incurred for performing the deleted work was not readily ascertainable.

■ There were no fixed agreed prices for portions of the work covered by the lump-sum contract. Absent such fixed agreed prices, the proper measure of an equitable adjustment in a reduction-of-work case like this is the reasonable cost of performing the work. *See, e.g., Gregory and Reilly Associates, Inc.*, 65–2 B.C.A. ¶ 4918 at 23,253 (1965); *Bruce Construction Corp. v. United States*, 324 F.2d 516, 518, 163 Ct.Cl. 97 (1963). The presumption is that reasonable cost is determined by a contractor's actual costs, *see Nager Electric Co. v. United States*, 442 F.2d 936, 951, 194 Ct.Cl. 835 (1971), and therefore bid pricing calculations, while useful in some instances in showing a contractor's own pre-dispute estimate of actual cost, cannot be relied on when they vary widely, as they do here, from the only estimates of actual cost in evidence.[2] That actual cost is the presumptive basis for measurement is not in dispute. The Board erred in concluding that the subcontract established a fixed price to GRS for the deleted line items. On the contrary, it is clear that the subcontract, just as GRS's contract with WMATA, was a lump-sum contract. The line-item allocation submitted by the subcontractor to GRS was presented after the subcontract was made and the subcontract was not amended to reflect it. Accordingly, there was no contract binding GRS to pay a set amount for the deleted work.

■ Therefore, the Court concludes that the Board majority's finding of cost is not supported by substantial evidence. Moreover, the majority erred as a matter of law in placing the burden on plaintiff to prove the unreasonableness of the line items as a measure of cost—something they were never intended to be in the first place. *See Victory Construction Co. v. United States*, 510 F.2d 1379, 1385, 206 Ct.Cl. 274 (1975).

The decision of the Board is reversed and the case is remanded with direction to determine a reasonable *cost* estimate within 90 days, plus interest as provided by law.

---

**2.** The courts accordingly have rejected reliance on bid prices when they do not reflect actual costs. *E.g., S.N. Nielsen Co. v. United States,* 141 Ct.Cl. 793 (1958).