**C.M.P., INC. d/b/a C.M.P. Corporation**

v.

**The UNITED STATES.**

No. 513–85C.

United States Claims Court.

Sept. 26, 1985.

Glenn E. Harris, Washington, D.C., for plaintiff.

Paul J. Ehlenbach, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant.

## MEMORANDUM OF DECISION

HARKINS, Judge.

On September 6, 1985, plaintiff filed a complaint for injunctive relief and a motion for a temporary restraining order. The relief sought was an order to restrain defendant from exercising, as of October 1, 1985, an option to renew a contract for computer maintenance services. At a hearing on September 9, 1985, it appeared that the contracting officer would not make a decision to exercise the option until September 25, 1985. In the circumstances, an order to maintain the status quo was unnecessary, and plaintiff's motion for a temporary restraining order was denied.

A briefing schedule was established to permit presentation of all jurisdictional and substantive issues in an orderly and comprehensive manner. Plaintiff on September 13, 1985, filed a motion for preliminary injunction; defendant filed a motion to dismiss on September 18, 1985, and plaintiff filed a reply on September 20, 1985.

Oral argument was heard on September 23, 1985. Inasmuch as matters outside of the pleadings were presented, defendant's motion to dismiss was treated as a motion for summary judgment. RUSCC 12(b). At the close of argument, it was ruled that this court lacks jurisdiction to grant equitable or extraordinary relief as authorized by 28 U.S.C. § 1491(a)(3). Plaintiff's motion for a preliminary injunction was denied; defendant's motion for summary judgment was allowed; and the complaint was ordered to be dismissed.

## FACTS

On February 8, 1985, the procurement division of the Department of Commerce issued an Invitation for Bids (IFB) No. 50–SOL–61665 to procure maintenance services for the Bureau of the Census for Government-owned IBM data processing equipment located in Suitland, Maryland. The IFB was prepared from the automated document preparation system of the Department of Commerce, and embodied the standard clauses utilized for the various procurements of that Department.

Prices for maintenance services for 14 listed items of equipment were solicited, to be provided during an initial period, with options to the Government to extend for additional periods. The IFB specified that the initial term of contract for services of a continuing nature such as maintenance would extend to September 30 of the award year, and that additional term periods were to be at the Government's option. Special contract provision H.1 provided, in part:

As used in this contract, the phrase "Term of the Contract" refers to that period of time for which this contract is valid for the purpose of the Government exercising certain unilateral rights, such as exercising options for increased quantity. If this contract results in services of a continuing nature, as opposed to one time services, such as but not limited to transportation or installation, then the term of contract shall be from the date of contract award through September 30 of the Government's fiscal year in which award is made, subject to the Government's unilateral option to extend the term of contract. Services of a continuing nature may include, but are not necessarily limited to lease/rent of equipment, license or lease of software, maintenance, or on-going system support.

The combination of initial and extended terms was limited to 42 months. Special contract provision H.2 provided:

a. This contract is renewable at the prices stated elsewhere in the contract, at the option of the Government, by the Contracting Officer giving written notice of renewal to the Contractor by the first day of each fiscal year, or funded portion thereof, of the Government, or within *30* days after funds for that fiscal year become available, whichever date is the la-

ter; provided that the Contracting Officer shall have given preliminary notice of the Government's intention to renewal at least *30* days before this contract is to expire. Such a preliminary notice of intent to renew shall not be deemed to commit the Government to renewals. If the Government exercises this option for renewal, the contract as renewed shall be deemed to include this option provision. However, the total duration of this contract, including the exercise of any options under this clause shall not exceed 42 months from the first day of service(s) covered hereunder.

Provisions in the IFB relative to evaluation of bids explained the policy reasons for use of the option method of contracting and gave notice that award would be based on the price for all option periods. Section M(a) stated, in part:

This solicitation is being conducted on the basis that the known requirements extend beyond the initial contract period to be awarded, but, due to the unavailability of funds including statutory limitations on obligation of funds, the option(s) cannot be exercised at the time of award of the initial contract. There is a reasonable certainty that funds will be available thereafter to permit exercise of the options. Because realistic competition for the option periods is impracticable once the initial contract is awarded, it is in the best interest of the Government to evaluate options in order to eliminate the possibility of a "buy-in."

Section M(c)(2) provided, in part:

Evaluation of Prices. Offers will be evaluated for purpose of award by adding the total price of all optional periods to the total price for the initial contract period covering the initial systems or items. These prices will be adjusted by the appropriate discount factors shown in this Section M. Evaluation of option prices will not obligate the Government to exercise the options.

Section M(f) contained the following notice:

failure to exercise an option(s) shall not obligate the Government to any charges other than the contract price including exercised options.

The IFB required price information to be supplied by means of completed unit price tables and by completion of a pricing questionaire. There were two tables: (1) pricing tables for equipment to be maintained and (2) a table for optional extended maintenance service and per-call monthly rates for service outside the designated principal period of maintenance (PPM). PPM was a defined term:

Any nine consecutive hours per day, including an official meal period not to exceed one hour per day, between the hours of 7:00 AM and 6:00 PM, Monday through Friday, excluding holidays observed at the installation.

The unit pricing tables listed and described each item of equipment, designated the number of units and contained space for insertion of a price for each item in columns. One column was headed: "Monthly Unit Price PPM" and the other column was headed: "Monthly Unit Prices Extended PPM."

A synopsis of the solicitation was published in Commerce Business Daily on December 21, 1984, and 14 companies requested copies of the IFB; eight companies, including plaintiff, submitted bids. At bid opening, on March 11, 1985, preliminary comparison of the pricing tables indicated that Sorbus, Inc., with a bid of $3,076.23 per month, was the low bidder. Sorbus, Inc. was announced as the low bidder at that time. Plaintiff's representatives at the bid opening complained that its bid had been erroneously interpreted and that its bid was $2,975 per month, which made it the actual low bidder. Plaintiff was told to make a written complaint.

On March 22, 1985, plaintiff's president, by letter, explained the computations on plaintiff's unit pricing tables and confirmed its contention that its bid when properly analyzed was for $2,975 per month for the equipment listed. Thereafter there were discussions between representatives of plaintiff and defendant, and plaintiff's con-

tentions were considered in the Commerce Department's general counsel's office.

Plaintiff had completed the pricing tables in a manner that was not clear on the face of the tables as submitted, and in a manner which was unexpected by defendant. None of the other bidders had submitted price information that was calculated on the same basis that plaintiff had used.

During July 1985, the contracting officer reviewed the IFB and the bids that had been submitted by plaintiff and Sorbus, Inc. The contracting officer concluded that it would be inappropriate and unfair to accept plaintiff's explanation of the manner in which its bid had been calculated or to permit plaintiff to correct the bid it had submitted.

At argument, defendant conceded that the agency had recomputed column 2 (Monthly Unit Prices Extended PPM) for all bids, for the reason that the IFB possibly was ambiguous as to that column. Plaintiff does not challenge defendant's authority to make such recomputations. In this recalculation, the contracting officer found that, on the basis of the information in column 1 of plaintiff's table, the total monthly on-call maintenance cost submitted by plaintiff was $6,425 per month. The recalculation of the bid of Sorbus, Inc. confirmed the $3,076.23 per month that company had submitted, and that Sorbus, Inc. had submitted the low bid.

On July 31, 1985, contract No. 50–YABC–5–66031 was awarded to Sorbus, Inc.

## DISPOSITION

Plaintiff does not challenge the award to Sorbus, Inc. of a contract under the IFB for the initial period, April 1—September 30, 1985. Plaintiff seeks to invoke the equitable jurisdiction of this court to enjoin the exercise of the option to procure maintenance services from Sorbus, Inc., during the forthcoming fiscal year, October 1, 1985, through September 30, 1986. Plaintiff's premise is that, as to the period commencing October 1, 1985, until the option is exercised, no contract is in being between

defendant and Sorbus, Inc., and, accordingly, that a contract had not been awarded on September 6, 1985, when plaintiff filed its complaint.

Plaintiff argues that an option is a contract in which one of the contracting parties holds an inchoate power to bring into being a second contract through acceptance of an offer that contractually has been rendered irrevocable under certain conditions.

The option that the Government may exercise for the period commencing October 1, 1985, according to plaintiff, would give rise to a new contractual relationship between the parties during the later performance period. Plaintiff argues that, since no contractual relationship presently exists between Sorbus, Inc. and the Government for that later period, plaintiff's claim qualifies as a contract claim brought before the contract is awarded within the meaning of 28 U.S.C. § 1491(a)(3).

■ Plaintiff misconceives the nature of the contractual relationship that was created between defendant and Sorbus, Inc. on July 31, 1985. That contract includes an initial term of computer maintenance that is to expire on September 30, 1985, and it includes provision for renewals of 1 year, with a maximum of 42 months from July 31, 1985. The options are essential parts of the total contractual relationship and are in no sense severable from the initial term as far as the obligations of the parties are concerned. Sorbus, Inc. is subject to an obligation to provide maintenance services at the contract rates for a maximum of 42 months. Concurrently, the defendant has a vehicle which assures it of those services at those prices if it is in its best interest.

■ The contract that was awarded was the contract that was intended to result from the IFB on which plaintiff submitted its bid. The exercise of an option in an existing contract is not equivalent to the award of a new and different contract; it is an element in the continuation of a unitary contract package. The decision to exercise an option is a matter of contract adminis-

tration, when done in compliance with the requirements of the federal acquisition regulation. 48 C.F.R. § 17.207.

■ This court's jurisdiction to grant equitable relief is founded in 28 U.S.C. § 1491(a)(3). Jurisdiction is limited to a "contract claim" brought before the contract is awarded. Unless a complaint is filed in this court before the contract is awarded, this court is without jurisdiction to provide equitable relief. *United States v. Grimberg*, 702 F.2d 1362, 1374 (Fed.Cir. 1983).

In this case, the contract that controls the exercise of this court's equitable jurisdiction was awarded on July 31, 1985, well before the complaint was filed on September 6, 1985. For purposes of section 1491(a)(3), the exercise of an option in an existing contract is not the equivalent of the award of a new contract.

■ The use of option clauses in IFB's and contracts accords with Government policies and procedures. The use of options is authorized in recognition of the Government's need in certain service contracts for continuity of operation where there is an anticipated need for similar services beyond a first contract period. 48 C.F.R. § 17.202(d). The use of options is particularly apt and is frequently used in Government contracts to obtain maintenance services. Plaintiff makes no contention that the inclusion of option clauses in this IFB, or in the contract, is forbidden by regulation or contrary to Government procurement policy.

Plaintiff compares the contractual relationships that arise through successive exercise of a series of options to the contracts in the program for the solicitation of rate proposals from freight forwarders which was considered in *Dean Forwarding Co. v. United States*, 2 Cl.Ct. 559 (1983). Plaintiff's comparison to the contracting procedures in *Dean* is in error. The facts are not analogous. In that case, the Army's Military Traffic Management Command had an ongoing program in which plaintiff had been a participant since 1972. Periodic solicitations for new rate proposals were made, generally twice a year. The rates filed, when certified, became final and applied to future contracts for transportation services to be awarded during the subsequent performance period. That procedure provided for a series of different contracts, based upon new and separate solicitations.

■ The conclusion that this court lacks jurisdiction to provide equitable relief under 28 U.S.C. § 1491(a)(3) makes it unnecessary to decide the numerous other contentions that were briefed and argued by the parties. Accordingly, no decision is made as to whether plaintiff's bid was nonconforming; whether plaintiff, in fact, was the low bidder; or whether defendant's disregard of column 2 of the unit pricing table in all bids accorded with the terms of the IFB or was permissible under the bid evaluation standards of the FAR. Nor, is it necessary to decide whether, on the facts of this case, plaintiff would have been able to demonstrate the four factors required to establish entitlement to injunctive relief: (1) that it will suffer a specific irreparable injury if the procurement is not enjoined; (2) that it is likely to succeed on the merits of its claim; (3) that the harm to be suffered by it outweights the harm to the Government and third parties if the procurement is enjoined; and (4) that the granting of injunctive relief serves the public interest. *Washington Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921 (D.C.Cir.1958).

In accordance with the foregoing, defendant's motion for summary judgment was allowed and the complaint was dismissed on September 23, 1985.