**B & H SUPPLY COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 168–86C.

United States Claims Court.

July 25, 1989.

Robert J. Martinez, Washington, D.C., for plaintiff.

E. Kathleen Shahan, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, Director, and M. Susan Burnett, Asst. Director, Washington, D.C., for defendant.

## OPINION

ANDEWELT, Judge.

This government contract action involves a contract for maintenance and repair work at 813 Naval housing units at the Naval Air Station in Corpus Christi, Texas. On January 11, 1985, the Department of the Navy (the Navy) issued a Change Order which deleted 74 housing units from the contract and ordered a corresponding decrease in the contract price. In this action, plaintiff, B & H Supply Company (B & H), contests the Navy's authority to make any such deduction in the contract price. This action is presently before the court on cross-motions for summary judgment. For

the reasons explained herein, the parties' respective motions are each denied.

### Facts [1]

The contract in issue [2] involves the provision of maintenance services at six groups of family housing units at the Corpus Christi Naval Air Station. The six groups, identified in Appendix A of the contract, encompass a total of 813 housing units, 28 trailer sites, and a community center. Performance of the contract commenced on February 1, 1984, and the contract expired on January 31, 1987.[3]

The contract is separated into two bid items. The competing bidders submitted bids on each bid item and the winner was determined based upon the aggregate of the two bids. Bid Item No. 1 covers a variety of specified maintenance tasks. The competing bidders each proposed a single fixed fee for performance of all of the listed maintenance tasks at all of the Appendix A properties.

Bid Item No. 2 covers different maintenance tasks (referred to as "Indefinite Quantity Work Items") for which the contractor would receive payment on a per-call basis. The competing bidders established their own respective prices for each task listed in Bid Item No. 2 (e.g., $17 for each pilot light lit and $55 for each gas range disconnected, moved, and reconnected). The total bid for Bid Item No. 2 was calculated by multiplying the price for each task by the number of times the government estimated that particular task would be performed during the course of the contract, and then by adding together the products for each of the tasks. The government's frequency-of-call estimates used in calculating the bid were not, however, binding on the government in that the winning bidder was not guaranteed any minimum number of calls for any task listed in Bid Item No. 2.

On May 21, 1984, less than four months after performance commenced under the contract, defendant notified plaintiff that after June 1, 1984, it would no longer be necessary for plaintiff to perform maintenance services at one of the six housing groups listed in Appendix A of the contract—the 74-unit Southgate Housing. The Navy decided to inactivate Southgate Housing because age had deteriorated those units beyond economic repair. Defendant requested that plaintiff supply a detailed cost estimate to cover the deletion of such services from the scope of the contract for the period from June 1, 1984, through January 31, 1985.

On December 19, 1984, plaintiff responded that defendant's plan to delete Southgate Housing and to reduce the contract price was unacceptable because such a deletion would not produce overall cost savings for plaintiff. In addition, plaintiff asserted that its original bid on Bid Item No. 2 was based upon the expectation that it would perform maintenance work on all 813 units and that the withdrawal of Southgate Housing was inconsistent with this expectation.

On December 20, 1984, the Navy informed plaintiff that because plaintiff had not supplied the requested cost estimates, the Navy had made its own calculations as to the appropriate decrease in the Bid Item No. 1 contract price to account for the withdrawal of Southgate Housing. The Navy calculated this deduction from information contained in a "Schedule of Deductions" (the Schedule) that plaintiff had submitted to the Navy shortly after entry into the contract. Plaintiff was required under the contract to provide the Schedule for the Navy's use in calculating payment deductions in the event of nonperformance or unsatisfactory performance by plaintiff. The form for the Schedule, as provided by the Navy, listed various Bid Item No. 1 tasks and estimated the number of times each such task would be performed per year. For each work task listed, plaintiff was required to fill in a per-unit price and a

---

1. The facts set forth below are not in dispute.

2. Contract No. N62467–83–C–9305, awarded on December 27, 1983.

3. The original contract term was one year but was extended by the government, pursuant to an option clause, for two additional years.

12–month total item price. The 12–month price was calculated by multiplying the unit price for a particular task by the government's estimate of the number of times that task would be performed during a year. The contract required that the Schedule prepared by the contractor be balanced, *i.e.*, that the sum of the 12–month total item prices for the various listed tasks equal the total lump-sum bid that plaintiff had submitted for Bid Item No. 1.

The Navy calculated the deduction of Southgate Housing from the contract price by using the per-unit prices supplied by plaintiff in the Schedule. It subtracted from the Bid Item No. 1 lump-sum bid an amount to account for the Navy's estimated decrease in the tasks that would be required under Bid Item No. 1 as a result of the deletion of the 74 Southgate Housing units.

On January 11, 1985, pursuant to the contract's changes clause, defendant issued Change Order No. 20, which deleted Southgate Housing from the contract and decreased the contract lump-sum price covering Bid Item No. 1. Over the three-year term of the contract, the contracting officer deducted a total of $43,018 from the contract price to account for this deletion. The deduction covered not only the time period after the January 11, 1985, Change Order, but also the period from June 1, 1984, up through the issuance of the Change Order on the ground that maintenance work actually ceased on June 1, 1984. Plaintiff filed this action to recover the monies deducted.[4]

*Discussion*

I.

In their respective summary judgment motions, the parties dispute whether the changes clause provides a contractual basis for decreasing the contract price as a result

of the deletion of Southgate Housing. Plaintiff argues that the contract is properly characterized as a requirements contract and that the government cannot use the changes clause to reduce a fixed fee in a requirements contract when it is faced with a downward fluctuation in government requirements. In response, defendant contends first that Bid Item No. 1 is properly characterized as a fixed-price, lump-sum contract rather than a requirements contract, and second that even if it were a requirements contract, the changes clause can support a downward equitable adjustment based on the deletion of Southgate Housing.[5]

 But it is not necessary for the court to resolve these disputes concerning the proper characterization of the contract and whether the changes clause can support defendant's actions. In any event, there is an independent basis in the contract for deleting Southgate Housing and reducing the contract fee—the contract's termination for convenience clause. The termination for convenience clause provides:

> The Contracting Officer, by written notice, may terminate this contract, in whole or in part, when it is in the best interest of the Government. If this contract is so terminated, the Government shall be liable only for payment in accordance with the payment provisions of this contract for services rendered prior to the effective date of termination.

The court finds itself in much the same position as the Court of Claims in *Nesbitt v. United States*, 170 Ct.Cl. 666, 345 F.2d 583 (1965), *cert. denied*, 383 U.S. 926, 86 S.Ct. 931, 15 L.Ed.2d 846 (1966). In *Nesbitt*, the contractor agreed to provide the government with certificates of title and title insurance on tracts of land acquired by the government for use in a dam and reservoir project. The plaintiff contended that

---

**4.** Plaintiff filed its original complaint on March 13, 1986. Defendant moved to dismiss on the ground that there was no final contracting officer decision with respect to part of the claim. After the contracting officer issued a final decision denying that part, plaintiff filed its amended complaint herein on October 26, 1987.

**5.** The changes clause provides:
> The Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes, within the general scope of this contract, in the definition of services to be performed, and the time ... and place of performance thereof.

the contract constituted a requirements contract and that the government breached the contract by procuring some certificates from another source. The defendant responded that the contract was not a requirements contract and that it was free to purchase the certificates from others.

The Court of Claims concluded, however, that it need not resolve the issue of whether the contract constituted a requirements contract because, in any event, there was no breach of contract. Rather, the court held that the government's liability under the contract was limited by the contract's termination for convenience clause. The fact that the government never actually invoked the termination for convenience clause was not determinative. The court explained, as follows:

> The defendant did not invoke this clause as it could have ... but instead acted on the assumption (which plaintiff now challenges) that the contracts were not "requirements" but "indefinite quantities" agreements, allowing the Government to order elsewhere at will. In comparable circumstances we have held that the failure of the defendant to invoke the convenience-termination article makes no difference and that clause nevertheless sets the limit to any possible recovery. *John Reiner & Co. v. United States*, 163 Ct.Cl. 381, 325 F.2d 438 (1963), *cert. denied*, 377 U.S. 931, [84 S.Ct. 1332, 12 L.Ed.2d 295] (1964); *Brown & Son Electric Co. v. United States*, 163 Ct.Cl. 465, 325 F.2d 446 (1963). *Cf. Goldwasser v. United States*, 163 Ct.Cl. 450, 325 F.2d 722 (1963).

*Id.* at 669, 345 F.2d at 585 (footnote omitted).

Here, as in *Nesbitt*, the government could have invoked the termination for convenience clause during the term of the contract but instead acted on the assumption, which plaintiff challenges, that it was not obliged to provide the work in issue to plaintiff. (Here, the government assumed that it could issue a Change Order under the changes clause to delete Southgate Housing from the scope of the contract and lower the overall contract price.) Thus, as in *Nesbitt*, "the failure to invoke the convenience termination article makes no difference and that clause nevertheless sets the limit to any possible recovery."

Plaintiff seeks to distinguish *Nesbitt* on the ground that in *Nesbitt*, the government actually had requirements under the contract that it chose to fill elsewhere, while here, the government simply eliminated and never filled the requirements. Plaintiff argues that the Navy assumed the risk that it would need less than the estimated quantities of work when it agreed to a lump-sum payment for the work covered under Bid Item No. 1, and that the Navy cannot resort to the termination for convenience clause to lower that agreed-upon lump-sum price because it turned out that it needed no maintenance work at all at Southgate Housing.

■ But plaintiff's argument misunderstands the availability and scope of the termination for convenience clause. The sole pertinent limitations governing resort to termination for convenience are, first, that the termination be for whole or part of the contract and, second, that the termination be deemed "in the best interest of the government."[6] As to the first requirement, the deletion of Southgate Housing represents part of the contract. The original contract obliged plaintiff to perform maintenance services on six housing groups listed in Appendix A of the contract, and the deletion of Southgate Housing eliminated plaintiff's responsibilities with respect to one of those six groups. As to the second requirement, the deletion of Southgate Housing was based on an assessment by the Navy of its "best interest" in that the Navy determined that Southgate Housing had deteriorated beyond economic repair. In this regard, it

---

6. The Navy's determination to close Southgate Housing came after entry into the contract. Since, the deletion apparently was based on changed expectations as to the economic viability of Southgate Housing, there is no issue as to whether there was adequate consideration in the contract to support the termination. *See Torncello v. United States*, 231 Ct.Cl. 20, 681 F.2d 756 (1982); *Salsbury v. United States*, 17 Cl.Ct. 47 (1989).

should be immaterial to the application of the termination for convenience clause whether the government's assessment of its best interest stems from a conclusion that it is preferable to secure the service from another party, as in *Nesbitt,* or from the conclusion in the case at bar that it is preferable not to secure the service at all. *See, e.g., Salsbury v. United States,* 17 Cl.Ct. 47 (1989).

*Maxima Corp v. United States,* 847 F.2d 1549 (Fed.Cir.1988), cited by plaintiff at oral argument, does not suggest a different analysis or result. In *Maxima,* the government never tried to change the scope or terms of the contract during the contract term. Rather, after the contractor had performed the contract in full and the contract had expired, the government sought resort to the doctrine of constructive termination for convenience to eliminate the guaranteed minimum payment in the contract. In denying resort to the doctrine of constructive termination, the court specifically distinguished situations, such as here involved, where the government curtailed performance during the term of the contract and there was an actual stoppage of work. *Id.* at 1553. *See also G.C. Casebolt Co. v. United States,* 190 Ct.Cl. 783, 788, 421 F.2d 710, 713 (1970).

## II.

■ Since the Navy was entitled to delete Southgate Housing from the scope of the contract and make an appropriate deduction in the contract price, the issue becomes whether the Navy was entitled to take the $43,018 deduction. To be reasonable, any such downward adjustment in price in a lump-sum contract should reflect the reasonable decrease in costs to the contractor resulting from the deletion of work. *See Varo, Inc. v. United States,* 212 Ct.Cl. 432, 443, 548 F.2d 953, 959–60 (1977); *Bruce Constr. Corp. v. United States,* 163 Ct.Cl. 97, 100, 324 F.2d 516, 518 (1963).[7]

■ Defendant originally sought summary judgment with respect to the entire deduction taken by the Navy which covers the contract period June 1, 1984, through January 31, 1987. However, in its response to defendant's cross-motion, plaintiff presented documents indicating that pursuant to Navy requests, plaintiff had performed some maintenance work on Southgate Housing prior to the Change Order of January 11, 1985. But it is not apparent from the documents whether plaintiff performed all of the work requested by the Navy under Bid Item No. 1. Hence, at this point, neither party is entitled to summary judgment as to the deduction covering the period prior to January 11, 1985.

As to the deduction for the time period after issuance of the Change Order, plaintiff acknowledges that it did not provide any maintenance work during that period. However, plaintiff contends that it was unreasonable for the Navy to calculate the amount of the deduction as it did using the "Schedule of Deductions." Plaintiff contends that the parties anticipated the Schedule to be used only for calculating liquidated damages for nonperformance or unsatisfactory performance by plaintiff and not to serve as a basis for calculating a decrease in contract price in response to a deletion of contract work. Most significantly, plaintiff alleges that the per-unit price figures in the Schedule do not correspond to any decrease in plaintiff's performance costs resulting from the deletion of Southgate Housing.

Plaintiff argues that the deletion did not decrease its costs at all; that it had significant fixed costs covering management and working staff that did not decrease as a result of the deletion of only 74 units. For example, plaintiff was obliged under the contract to keep qualified staff, *e.g.,* electrical and plumbing, available 24 hours a day, and plaintiff alleges, in effect, that the elimination of the 74 Southgate Housing

---

7. The parties agree that the same downward adjustment in price in the lump-sum contract price for Bid Item No. 1 would result and the same standards in calculating that adjustment would apply whether Southgate Housing was deleted under the changes clause or under the termination for convenience clause.

units did not reduce its costs to fulfill that obligation.[8] Plaintiff supports certain of these contentions through the submission of affidavits by its president, Mr. Arnold Wool.

Summary judgment is appropriate only in the absence of a genuine dispute as to a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Mr. Wool's affidavits do not demonstrate that plaintiff's costs did not decrease at all after January 11, 1985, as a result of the deletion of Southgate Housing. The affidavits are, however, sufficient to raise a material issue of fact as to whether the deduction taken by the Navy in the lump-sum Bid Item No. 1 fee for that period reflects the reasonable decrease in costs resulting from the deletion. *See Varo, Inc.,* 212 Ct.Cl. at 443, 548 F.2d at 960; *Bruce Constr.,* 163 Ct.Cl. at 100, 324

F.2d at 518. Given the existence of this genuine dispute as to a material issue of fact, summary judgment is not warranted for either party as to the deductions taken by the Navy for the contract period commencing January 11, 1985.

*Conclusion*

For the reasons set forth above, the parties' respective motions for summary judgment must each be denied.

IT IS SO ORDERED.

---

8. Plaintiff also faults the Schedule for not even encompassing all of the contract work that plaintiff was required to perform under Bid Item No. 1. Plaintiff argues that work relating to one of the six Appendix A groups, a mobile home park consisting of a community center and 28 trailer sites, was not mentioned in the "Schedule of Deductions" form provided by the Navy. Thus, while the Schedule was balanced in that the total for the *listed* tasks equaled the total bid on Bid Item No. 1, some tasks that plaintiff was obliged to provide were not part of the balance.