**VHC INC. (formerly known as Varo Inc.), Appellant,**

v.

**F. Whitten PETERS, Acting Secretary of the Air Force, Appellee.**

No. 98–1327.

United States Court of Appeals, Federal Circuit.

June 10, 1999.

Daniel Joseph Riley, Baker & Botts, L.L.P., Washington, D.C., argued, for appellant. With him on the brief was O. Kevin Vincent. Of counsel were Paul W. Searles, Jr., Dallas, Texas, and John B. McDaniel, Washington, D.C.

Wanda Rubianes–Collazo, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued, for appellee. With her on the brief were David M. Cohen, Director, and Mark A. Melnick, Assistant Director. Of counsel on the brief was Nancy Sumption, Attorney, AFLSA/JACN, Arlington, Virginia.

Before RICH[1], CLEVENGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

The Air Force awarded a contract to VHC Inc.[2] for development and supply of power sources for the airborne AIM–9 missile launcher. When the Air Force terminated a portion of the contract for convenience, VHC requested an equitable adjustment for unamortized labor learning costs on the unterminated portion of the contract. The Air Force denied the request. On appeal, the Armed Services Board of Contract Appeals (the ASBCA or Board) upheld the Air Force's decision. Because the Board erred in applying a *per se* rule that unlevel pricing precludes recovery of unamortized labor learning costs, this court reverses and remands.

## I.

The Air Force awarded the contract in dispute on October 3, 1986. The basic contract called for VHC to deliver 1673 power supplies at a firm fixed price of $4,052,840. This quantity included 12 first article power supplies and a production quantity of 1661 power supplies. In addition, the contract gave the Air Force two options to order additional power supplies. Options I and II each called for additional lots of 1673 power supplies at firm fixed prices of $3,049,879 and $3,061,590, respectively. Under Federal Acquisition Regulation (FAR) 52.249–2, the Air Force could

---

1. Circuit Judge Rich heard oral argument in this appeal and participated in the decision but died on June 9, 1999, before the opinion was promulgated.

2. At the time of contract award, appellant was known as "Varo Inc." While this case was pending, Varo changed its name to "VHC Inc." For purposes of this opinion, this court will refer to appellant as "VHC."

terminate, for convenience, all or part of the order.

The Air Force first exercised Option I on May 12, 1989, and subsequently exercised Option II on March 20, 1990. However, on September 4, 1990, the Air Force terminated for convenience all work associated with Option II. At the time of termination, VHC had not produced any of the 1673 Option II units.

By letter dated December 7, 1993, VHC requested an equitable adjustment in the unterminated portion of the contract.[3] Specifically, based on a learning curve analysis, VHC sought to recover its unamortized labor learning costs incurred in producing the unterminated production units. VHC asserted that its production efficiency had increased (i.e., it had experienced positive labor learning) during production of the first 3334 units and, consequently, that its cost of producing a unit had decreased over time. Therefore, VHC reasoned, had the Air Force not terminated the contract prior to production of the Option II units, its labor learning would have reduced the average unit cost over the entire contract. VHC therefore requested the equitable adjustment to compensate for the increased labor costs on the unterminated units that it would have recovered through production and sale of the Option II units.

In a final decision dated June 30, 1994, the contracting officer for the Air Force denied VHC's claim for an equitable adjustment. VHC appealed to the Board. The Board concluded that VHC was not entitled to an equitable adjustment on the unterminated portion of the contract. Because VHC's pricing was not level over the entire contract, the Board reasoned that VHC could not have expected to recover

its unamortized labor learning costs of early production through decreased labor costs later in production. To reach this conclusion, the Board relied on *Bermite Division of Tasker Industries*, ASBCA No. 18280, 1976 WL 2081, 77–1 BCA ¶ 12,-349, 59,764:

> [I]t is not only relevant but indeed crucial to the concept of amortization over all contract quantities that one fixed unit price is to be paid for all quantities. In the absence of one fixed unit price, and in the presence of various unit prices for individual units or groups of units to be produced, there is no longer any expectation that costs of early production will be recovered from the unit price to be paid for all quantities including later and less costly production. Rather, there would be the expectation that the prices paid for various individual units were designed to compensate the contractor for costs of producing those units.

Accordingly, the Board held that VHC could not recover labor learning costs because the contract required different fixed prices for each of the three stages.

## II.

The Contract Disputes Act, 41 U.S.C. § 609(b) (1994), sets forth the standard of review for this case. This court reviews questions of law in appeals from the ASBCA *de novo, see* 41 U.S.C. § 609(b), but accepts the Board's findings of fact unless "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or ... not supported by substantial evidence." *Id.*

█ The power supply contract contains FAR clause 52.249–2, "Termination for Convenience of the Government (Fixed–

---

**3.** FAR 52.249–2(k) requires a contractor to request an equitable adjustment within 90 days after the effective date of a partial convenience termination. VHC did not submit its equitable adjustment request until more than

three years after the effective date of partial termination. However, the Board found that the Air Force waived its affirmative defense of untimeliness by failing to raise the defense in the pleadings.

Price) (APR 1984)." Subparagraph (k) of the clause states: "If the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract." An equitable adjustment makes a contractor whole after the Government modifies a contract. *See Bruce Construction Corp. v. United States,* 163 Ct.Cl. 97, 324 F.2d 516, 518 (1963). Thus, FAR 52.249(k) aims to place the contractor in the position that it would have enjoyed, with respect to the unterminated portion of the contract only, had the termination not occurred. *See id.*

The Board has long recognized unamortized labor learning costs as a legitimate form of recovery after a partial termination for convenience. *See Hunter Mfg. Co.,* ASBCA No. 48,693, 97–1 BCA ¶ 28,-824; *Sierracin/Sylmar,* ASBCA Nos. 27,-531, 30,380, 1985 WL 16589, 85–1 BCA ¶ 17,875; *Dunbar Kapple, Inc.,* ASBCA No. 3631, 57–2 BCA ¶ 1448. Proof of unamortized labor learning costs is based on a learning curve which shows that, for certain products, the direct labor hours to produce a unit declines as more units are produced. *See Celesco Indus., Inc.,* ASBCA No. 21,928, 1981 WL 7118, 81–2 BCA ¶ 15,260. In other words, as production proceeds, labor productivity increases and the higher costs of producing products early in the contract may be recovered through the sale of later produced, lower cost products (i.e., amortization). *See Dunbar Kapple,* 57–2 BCA at ¶ 4879. If the government partially terminates a contract for such products, the contractor loses the opportunity to amortize the increased early labor costs over the life of the contract. As the Board explained in *Bermite:*

> The unamortized labor expense sought by appellant is not attributable to the completed items but rather, consistent with the principle of amortization, is attributable to the canceled items, and is a

cost which would have been recovered in the basic unit prices to have been paid for the canceled items.

77–1 BCA at ¶ 59,763. Under this reasoning, if VHC can prove its decreasing labor costs, it will be entitled to recover the portion of the higher labor costs incurred in producing the basic and Option I contract units attributable to the partial termination. Such proof would establish that the Air Force's termination of Option II deprived VHC of the opportunity to recover a portion of its costs associated with producing the basic and Option I units through amortization.

■ VHC would receive this equitable adjustment even though the terminated units were originally included in the contract by exercise of an option. Although originally part of the contract as an option, the Air Force exercised that option. Once exercised, the option became part of a single unitary contract. *See International Business Investments, Inc. v. United States,* 21 Cl.Ct. 79, 80 (1990) (where obtaining an option is not the primary purpose of the original contract, "an option should be treated as a continuation of the original contract"); *C.M.P., Inc. v. United States,* 8 Cl.Ct. 743, 746 (1985) ("the exercise of an option in an existing contract is not equivalent to the award of a new and different contract; it is an element in the continuation of a unitary contract package"); *Boeing Aerospace Operations, Inc.,* ASBCA Nos. 46274, 46275, 1994 WL 96970, 94–2 BCA ¶ 26,802, 133,281 n. 4 ("the general rule [is] that exercise of an option should be treated as a continuation of the original contract"); *Varo, Inc.,* ASBCA No. 16606, 1972 WL 1765, 72–2 BCA ¶ 9720 (multi-year contract with optional additional years treated as a unitary whole for equitable adjustment purposes). In considering VHC's entitlement to an equitable adjustment, this court must look at the entire contract at the time of the Air Force's termination for convenience. At

that time, the contract included the power supplies of Option II. Thus, if VHC can show unamortized labor learning costs incurred as part of the unterminated portion of the contract, it is entitled to a recovery.

The Board denied that recovery, relying primarily on its *Bermite* decision because the pricing of this contract was not level. In *Bermite,* the contractor received a multi-year contract for the production of over 29 million MK 78 fuses. 77–1 BCA at ¶ 59,751. The *Bermite* contract required a single basic unit price for all contract program years and for all contract quantities. During the course of the contract, however, the Government issued a number of change orders modifying the contract specifications as to units produced during the fifth and sixth program years. For these quantities, the contractor negotiated a separate and higher basic unit price. When the Government canceled production for the seventh and eighth program years, the contractor requested an equitable adjustment to recover unamortized labor learning costs attributable to the terminated units. The Board awarded unamortized labor learning costs incurred during the first four program years of the contract. As for the fifth and sixth program years, however, the contractor received the separately negotiated price because the Board presumed that the contractor had accounted for labor learning in this separate pricing structure. "Indeed, when the adjustment in price ... [was] agreed upon for the Fifth Program Year units and the Sixth Program Year units, the remainder of the contract quantities had been canceled." *Id.* at ¶ 59,764–65.

*Bermite* does not control the case at hand. The present case does not involve renegotiated unit pricing. The pricing scheme of this contract, which includes different unit prices for the basic, Option I, and Option II quantities, remained fixed throughout the life of the contract. This "unlevel pricing" is not the type that pre-

cluded recovery of some unamortized labor learning costs in *Bermite.* Thus, the Board erred by relying on *Bermite* to deny VHC's claim.

The Air Force argues that VHC's assignment of different unit prices for the three distinct stages of the contract demonstrates that, as in *Bermite,* VHC did not expect to amortize its labor learning costs over the entire contract. Moreover, the Air Force asserts, VHC could not have expected to amortize labor costs over the Option I and Option II units because the Air Force was not obligated to exercise the two options. The Air Force therefore focuses its arguments on what VHC could have expected at the time of contracting.

The issue, however, is not whether VHC *expected* to amortize labor costs at the time of contracting. An equitable adjustment depends on actual costs incurred, measured at the time of termination, not the costs expected at the time of bidding or contracting. *See Hunter,* 97–1 BCA at ¶ 143,829–30. The thrust of the Air Force's argument is that VHC's three-staged pricing schedule demonstrates that VHC expected to recover its costs associated with each successive contract stage in the pricing for that stage. Therefore, the Air Force argues, VHC must have taken into account its learning costs in the pricing for each segment because it could not have expected to recover those costs over the entire life of the contract when it knew that the options might not be exercised. This argument fails for several reasons. Initially, the Air Force incorrectly implies that the only explanation for the separate prices associated with each contract stage is VHC's expectation of reduced labor costs. VHC might have included varying production costs based on its contemplated shift in production from Garland, Texas to Juarez, Mexico, or for any number of other reasons. Furthermore, if VHC had in fact priced the contract with reduced labor costs in mind, one would expect each stage

to be priced lower than the previous one. Yet, the price for the third stage, $3,061,-590, is actually higher than the second stage price, $3,049,879. Moreover, the Board itself has explicitly rejected this argument in the past. *See Celesco*, 81–2 BCA at ¶ 75,559 (refusing the Government's argument "that the claim for loss of learning should be denied because appellant failed to demonstrate that it had used learning curve principles ... when preparing its bid").

This court holds that VHC is not precluded from recovering unamortized labor learning costs where the terminated portion of the contract was originally included by exercise of an option; nor is recovery automatically prohibited where the original contract pricing was not level. However, to recover unamortized labor learning costs, VHC must still prove that it experienced positive labor learning during performance of the unterminated portion of the contract.

## COSTS

Each party shall bear its own costs.

*REVERSED AND REMANDED.*